PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2894
_____

ROBERT W. MAUTHE, M.D., P.C.,
Individually and on behalf of all others similarly situated

v.

OPTUM INC., OPTUMINSIGHT, INC.


ROBERT W. MAUTHE, M.D., P.C.,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-17-cv-01643)
Honorable Edward G. Smith, District Judge
_____

Argued March 8, 2019

BEFORE:  AMBRO, RESTREPO, and GREENBERG,
<u>Circuit</u> <u>Judges</u>

(Filed: May 28, 2019)
_____

Phillip A. Bock (argued)
Daniel J. Cohen
Molly F. Stemper
David M. Oppenheim
James M. Smith
Bock Hatch Lewis & Oppenheim
134 North La Salle Street
Suite 1000
Chicago, IL 60602

Richard E. Shenkan
Shenkan Injury Lawyers
6550 Lakeshore Street
West Bloomfield, MI 48323

    Attorneys for Appellant

Kathryn M. Ali
Jessica L. Ellsworth (argued)
Benjamin A. Field
Kaitlyn Golden
Adam K. Levin
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

Stephen A. Loney, Jr.
Hogan Lovells US
1735 Market Street
23rd Floor
Philadelphia, PA 19103

    <u>Attorneys for Appellee</u>

_____

OPINION

_____

GREENBERG, <u>Circuit</u> <u>Judge</u>

## I.   INTRODUCTION

This matter comes on before this Court on the appeal of plaintiff Robert W. Mauthe M.D. P.C. challenging the District Court's grant of summary judgment against its complaint brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). We consolidated this case for argument with <u>Mauthe v. Nat'l Imaging Assocs., Inc.</u>, No. 18-2119, 2019 WL 1752591 (3d Cir. Apr. 17, 2019) ("<u>NIA</u>"), a case that the same plaintiff filed against a different defendant under the TCPA because the two cases raised similar issues. Although the plaintiff in both cases is a professional corporation, we will refer to the plaintiff as Robert W. Mauthe, as though an individual, as we did in <u>NIA</u>. In this case, Mauthe alleged that he received an unsolicited advertisement via fax from defendants Optum, Inc. and OptumInsight, Inc., related entities, in violation of the TCPA and included in his complaint

3

a supplemental state law claim for common law conversion. Defendants moved for summary judgment, and the Court granted their motion on the TCPA claim and dismissed the state law claim without prejudice, as it declined to exercise jurisdiction over it. Robert Mauthe, M.D. PC v. Optum, Civ. No. 17-1643, 2018 WL 360912 (E.D. Pa. July 27, 2018) ("Optum"). For the reasons stated below, we will affirm the order of the Court in both respects.

## II.  FACTUAL BACKGROUND

The facts of this case are essentially undisputed. Defendants maintain a national database of healthcare providers, containing providers' contact information, demographics, specialties, education, and related data. Defendants market, sell, and license the database typically to health care, insurance and pharmaceutical companies, who use it to update their provider directories, identify potential providers to fill gaps in their network of providers, and validate information when processing insurance claims. Obviously, it is important that the information contained in the database be accurate and Mauthe, who is a healthcare provider, does not contend otherwise.

One of the ways defendants update and verify the information in their database is to send unsolicited faxes to healthcare providers listed in the database, requesting them to respond and correct any outdated or inaccurate information. The faxes inform the recipients that:

> As part of ongoing data maintenance of our Optum Provider Database product, Optum regularly contacts healthcare practitioners to verify demographic data regarding your office

4

location(s).  This outreach is independent of and not related to your participation in any Optum network.  By taking a few minutes to verify your practice information is current, your information will be promptly updated in Optum Provider Database.

This data is used by health care related organizations to aid in claims payment, assist with provider authentication and recruiting, augment their own provider data, mitigate healthcare fraud and publish accurate provider directories.

Optum, 2018 WL 3609012, at *2.  The faxes also advise the recipients that "[t]here is no cost to you to participate in this data maintenance initiative.  This is not an attempt to sell you anything."  Id.  The fax that defendants sent Mauthe included these provisions.

### III. STANDARD OF REVIEW

We exercise de novo review on this appeal.  See Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ., 880 F.3d 643, 650 (3d Cir. 2018).  "Our review of the District Court's [summary judgment] decision is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate."  State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009).  "[S]ummary judgment is properly granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Sconiers v. United States, 896 F.3d 595, 597 n.3 (3d Cir. 2018) (quoting

5

Fed. R. Civ. P. 56(a)).[1]

## IV. DISCUSSION

Under the TCPA, it is unlawful to send an unsolicited advertisement by fax. NIA, 2019 WL 1752591, at *2. Mauthe asks us to hold that the fax was an unsolicited advertisement which the TCPA prohibited defendants from sending to him. In NIA, we articulated the standard to determine when a fax has been sent to a potential direct purchaser of a product or service in violation of the TCPA, but we also opined that liability for a TCPA violation is not necessarily limited to a situation in which a fax is sent to potential direct purchasers of the sender's product or services. Id. at *3 n.3. Mauthe does not claim to be a potential direct purchaser of defendants' services and defendants disclaim any intention to sell him anything. Indeed, their fax to him recited as much, as it said that the fax was not an attempt to sell him anything. After our examination of the fax we have concluded that there is no basis on which defendants can be held to have violated the TCPA on the basis of the fax if the meaning of the advertisement is viewed in a conventional way. Consequently, we consider a possible broader basis for liability predicated on the fact that this case involves third parties beyond defendants and Mauthe, i.e., the users of defendants' database.

An example of a possible TCPA violation by the sending of a fax to an entity other than a possible direct purchaser of the sender's product or services is a fax sent to a doctor encouraging the doctor to prescribe a particular drug to the doctor's patients

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

6

who, rather than the doctor, are the likely purchasers of the sender's product.  Id.  We refer to liability in such situations as "third-party based liability,"[2] as the sender is not attempting to sell the recipient anything.  Id.  But in NIA because potential third-party based liability was not at issue, we did not address the question of whether there could be a third-party based liability by reason of the sending of a fax.  That issue now is squarely before us because defendants sent the fax to Mauthe in order to update their database to be accessed by third parties who were not the recipients of defendants' faxes and the faxes were not an attempt to sell Mauthe or the putative class members anything.

Mauthe advances his third-party based liability argument on a theory that, although he was not a purchaser of defendants' products or services, defendants violated the TCPA because they had a profit motive in sending him the fax so that the fax should be regarded as an advertisement.  Mauthe asserts that defendants sought the information in the fax to enhance the accuracy of their database and thus increase their profits.  We agree with the stated factual basis for his claim because defendants were using the faxes to improve the accuracy of their database.  However, the TCPA only prohibits unsolicited advertisements, not any and all faxes even if sent for a commercial purpose.  It seems beyond doubt that a fax does not become an advertisement merely because the sender intended it to enhance the quality of its products or services and thus its profits.  After all, a commercial entity takes almost all of its actions with a profit motivation.

---

[2] We used the term "third-party based liability" even though the parties do not do so in their briefs.  They do, however, refer to third parties in their briefs.

7

But as we opined in NIA, "[a]dvertising is the action of drawing the public's attention to something to promote its sale. So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." NIA, 2019 WL 1752591, at *2 (internal quotations, quotation marks and citations omitted).

We are satisfied that to establish third-party based liability under the TCPA a plaintiff must show that the fax: (1) sought to promote or enhance the quality or quantity of a product or services being sold commercially; (2) was reasonably calculated to increase the profits of the sender; and (3) directly or indirectly encouraged the recipient to influence the purchasing decisions of a third party. As we explained in NIA, "the fax must convey the impression . . . that a seller is trying to make a sale[.]" NIA, 2019 WL 1752591, at *2. It is not enough that the sender sent a fax with a profit motive—in order to show that the sender is trying to make a sale, there must be a nexus between the fax and the purchasing decisions of an ultimate purchaser whether the recipient of the fax or a third party. The liability standard articulated in NIA, and the one we articulate here in a third-party based liability situation, hinges on whether the fax was somehow intended to influence a potential buyer's decision in making a purchase, irrespective of whether the sender sent the fax to the potential buyer or to a third party and must have been intended to or at least be capable of influencing a buyer's purchasing decision. If we adopted a less demanding standard, we would risk extending too far the prohibitions that the TCPA established. We believe that our construction of the TCPA faithfully adheres to what the TCPA facially prohibits, while broadly construing the TCPA to provide plaintiffs with an alternative theory of liability even when the fax is not sent to

8

potential direct purchasers of a defendant's products or services.

We give an example that supports our conclusion and demonstrates why we must be concerned with possible overreaching of the application of the TCPA that we derive from the analogous field of telemarketing, a practice that the TCPA regulates. In dealing with telemarketing the TCPA prohibits

> any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes [or is] exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B). Under the rules promulgated by the Federal Communications Commission, calls are exempt from the statutory prohibition "if not made for a commercial purpose" or, as germane here, if they do "not include or introduce an advertisement or constitute telemarketing." 47 C.F.R. § 64.1200(a)(3). The FCC has also opined that "calls conducting research, market surveys, political polling or similar activities [that] do not involve solicitation as defined by our rules" are exempt from the statutory prohibition on artificially prescribed calls. In the Matter of Rules and Regulations Implementing the TCPA, 1992 WL 690928, at *15, 7 FCC Rcd. 8752, 8774 ¶ 41 (Oct. 16, 2012). Consequently, a marketing firm making calls to conduct pure market research, and a pollster conducting a political poll by telephone, do not violate TCPA's telemarketing

prohibition.[3]

Commercial entities conducting research sometimes do so by sending faxes. Under Mauthe's theory, these firms would violate TCPA's prohibition on the sending of an unsolicited fax advertisement because they would send their faxes for the purposes of improving their operations and thus their profits. But such faxes would not promote the sale of any products or services, or seek to influence the purchasing decisions of a potential buyer. We will not adopt a construction that broadly would limit commercial activities to the extent Mauthe invites. See NIA, 2019 WL 1752591, at *2-3. The requirement for establishing TCPA liability that we set forth is that there be a nexus between the sending of the fax and the sender's product or services and the buyer's decision to purchase the product or services accomplishes the TCPA objective without infringing on other commercial activities.[4]

---

[3] We note that there is a petition for expedited declaratory ruling on whether market research surveys are fax advertisements as defined by the TCPA pending before the FCC. See Lyngaas v. J. Reckner Assocs., Inc., No. 2:17-cv-12867, 2019 WL 166227, at *1-2 (E.D. Mich. Jan. 10, 2019).

[4] In fact, under Mauthe's theory an employer with a letterhead listing its address, telephone number and products and services would violate the TCPA if it sent a fax on its letterhead to inquire about the qualifications of a job applicant from the applicant's former employer because employee selection is certainly related to making a profit.

10

Turning to the facts of this case, Mauthe's claim does not survive our standard for third-party based liability or any other theory of liability under the TCPA. Though defendants intended their faxes to obtain information enhancing the quality of their services, and thus reasonably calculated their faxes to increase their profits by keeping their database updated, the faxes did not attempt to influence the purchasing decisions of any potential buyer, whether a recipient of a fax or a third party. Moreover, the fax sent to Mauthe did not encourage him to influence the purchasing decisions or those of a third party. Though we appreciate the annoyance and/or harassment Mauthe felt receiving unsolicited faxes, we are constrained in reaching our decision by what the TCPA actually prohibits—it does not prohibit all unsolicited faxes, just advertisements. We will not distort the meaning of "advertisement" to accommodate Mauthe's case. Therefore, we will uphold the District Court's conclusion that defendants' fax was not an "advertisement" under the TCPA.

The District Court also held that the fax was not a pretext to more commercial solicitation. Optum, 2018 WL 3609012, at *7. As we stated in NIA, we have not endorsed and do not now do so the pretext theory of liability under the TCPA, a matter that is still open. 2019 WL 1752591, at *3. However, for the same reasons that we set forth in NIA in rejecting a pretext claim even if such a claim is potentially viable, Mauthe's pretext claim fails because there was no evidence that defendants "intended to send Mauthe any future faxes, let alone any more advertisements." Id. at *3 n.4. We recognize that defendants may send Mauthe another fax to verify his information, but that fax will no more be an advertisement than the fax here if it is of similar content. Moreover, there is no evidence that the fax that

11

defendants already sent was a pretext so that it later could send an additional fax.  Thus, we also will uphold the District Court's ruling that defendants' fax was not a pretext to further commercial solicitation.

Inasmuch as we hold that the District Court did not err in granting summary judgment in favor of defendants on Mauthe's TCPA claim, the only federal claim in the case, we also hold that the Court did not err in declining to exercise supplemental jurisdiction over Mauthe's state law claim.  In this regard a court does not err if it declines to exercise supplemental jurisdiction over state claims after it dismisses a federal claim on which its jurisdiction is based in the absence of extraordinary circumstances.  Bright v. Westmoreland Cty., 380 F.3d 729, 751 (3d Cir. 2004).  There are no extraordinary circumstances here.

## V.  CONCLUSION

For the foregoing reasons we will affirm the order of July 27, 2018.