PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3018
_____

DR. RICHARD E. FISCHBEIN,

Appellant

v.

OLSON RESEARCH GROUP, INC.; JOHN DOES 1-12
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-17-cv-05601)
District Judge:  Honorable Gerald J. Pappert

_____

No. 19-3222
_____

ROBERT W. MAUTHE M.D., P.C.,
Individually and as the representative of a class of similarly
situated persons,

Appellant

v.

ITG, INC.; ITG INVESTMENT RESEARCH, INC.;
M SCIENCE LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-18-cv-01968)
District Judge:  Honorable Chad F. Kenney

_____

Argued March 24, 2020

BEFORE: JORDAN, RESTREPO and GREENBERG,
Circuit Judges.

(Filed: May 15, 2020)

_____

Phillip A. Bock (Argued)
Robert M Hatch
David M. Oppenheim
Bock Hatch Lewis & Oppenheim
134 North La Salle Street
Chicago, IL 60602
    *Counsel for Appellant in No. 19-3018*

Samantha L. Southall (Argued)
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102
    *Attorneys for Appellee in No. 19-3018*

Phillip A. Bock (Argued)
Molly S. Gantman
David M. Oppenheim
Bock Hatch Lewis & Oppenheim
134 North La Salle Street, Suite 1000
Chicago, IL 60602

Daniel J. Cohen
P.O. Box 432040
Maplewood, MO 63143

Andrew J. Reilly
Swartz Campbell
115 North Jackson Street
Media, PA 19063

Richard E. Shenkan
Shenkan Injury Lawyers
P.O. Box 7255
New Castle, PA 16107
    *Attorneys for Appellant in No. 19-3222*

Francis J. Earley (Argued)
Mintz Levin Cohn Ferris Glovsky & Popeo
The Chrysler Center
666 Third Avenue
New York, NY 10017

Esteban Morales
Mintz Levin Cohn Ferris
2029 Century Park East, Suite 3100
Los Angeles, CA 90067

James W. Kraus
Pietragallo Gordon Alfano Bosick & Raspanti
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

Kevin E. Raphael
Pietragallo Gordon Alfano Bosick & Raspanti
1818 Market Street, Suite 3402
Philadelphia, PA 19103
 *Attorneys for Appellee ITG, INC. in No. 19-3222*

Patrick D. Doran (Argued)
Thomas P. Manning
Craig D. Mills
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102
 *Attorneys for Appellees ITG Investment Research, Inc.*
 *and M Science LLC in No. 19-3222*

_____

OPINION OF THE COURT
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.    INTRODUCTION

In this pair of appeals, we are asked to decide whether faxes soliciting participation by the recipients in market research surveys in exchange for monetary payments are advertisements within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(1)(C) ("TCPA"), which prohibits the transmission of unsolicited fax advertisements.  Applying our recent precedent in Mauthe v. Optum, Inc., 925 F.3d 129 (3d Cir. 2019), the District Courts dismissed both cases under Federal Rule of Civil Procedure 12(b)(6) as the Courts concluded that such surveys are not advertisements within the TCPA because they did not attempt to sell anything to their recipients.  We hold, however, that solicitations to buy products, goods, or services can be advertisements under the TCPA and the solicitations for participation in the surveys in exchange for $200.00 by one sender and $150.00 by the other sender were for services within the TCPA.[1]  Defendants characterize the proposed payments as "honorariums" or "gifts".  Consequently, we will reverse the District Courts' dismissal of these cases by orders dated August 26, 2019, in Fischbein v. Olson Research Group, No. 19-3018, and August 29, 2019, in Mauthe v. ITC, Inc., No. 19-3222, and will remand the cases to the District Courts for further proceedings.[2]

---

[1] In some circumstances lesser payments were involved.

[2] In Mauthe v. National Imaging Assocs., we pointed out that we were not addressing the question of whether a fax in which the sender is seeking to buy something from the recipient comes within the TCPA. 767 F. App'x 246, 249 n.1 (3d Cir. 2019).

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Courts had jurisdiction under 28 U.S.C. §§ 1331 and 1332 and we have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's dismissal under Rule 12(b)(6) for failure to state a claim on which relief may be granted.  Geness v. Cox, 902 F.3d 344, 353 (3d Cir. 2018).  In determining whether a plaintiff sufficiently has stated a claim to survive a motion to dismiss under Rule 12(b)(6), "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff . . . .  However, we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."  City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) (internal quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)).

## III.    DISCUSSION

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C).  It defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which

6

is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." Id. § 227(a)(5). As we held in Optum, "to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." 925 F.3d at 133 (citation omitted). In the context where an entity sends a fax attempting to make a sale, we held that "there must be a nexus between the fax and the purchasing decisions of an ultimate purchaser." Id.

However, nothing in Optum limits an advertisement to a fax that the sender intends will facilitate the sale of a service or product to the recipient. We do not doubt that a recipient of a fax offering to buy goods or services from the recipient would consider the fax to be an advertisement. After all, a fax attempting to buy goods or services is no less commercial than a fax attempting to sell goods or services to the recipient and a fax that is an element of a market research survey is just as commercial as a fax attempting to sell or buy goods or services to or from the recipient. Therefore, it is obvious that a fax seeking a response to a survey is seeking a service.

The parties in their briefs address the question of whether money is a form of property for the purposes of the TCPA. We fail to see the relevance of that question. In considering whether the sender of a fax has an intent to buy "property, goods, or services" available commercially, the term used in the TCPA, 47 U.S.C. § 227(a)(5), means the property, goods or services being bought or sold, not the money offered to buy them. The defendants appear to construe unsolicited advertisement which the TCPA defines as "any material advertising the commercial availability or quality of any property, goods, or services"—as requiring that the offer itself, in this case money, to be the "property, goods, or services" commercially available. Id. We

7

do not construe the statute so narrowly. Any fax announcing the availability of an opportunity for the recipient to exchange goods or services for compensation is "material advertising the commercial availability or quality of any property, goods, or services," within the TCPA. Id. We reiterate that a fax offering the opportunity to sell is just as commercial in character as a fax offering the recipient the opportunity to buy property, goods, or services.

Defendants argue that Optum, though in dicta, suggested that market research surveys are not advertisements within the TCPA's prohibition against unsolicited fax advertisements. Optum, 925 F.3d at 134. But that observation was not a legal conclusion. We merely highlighted that the FCC, at least at that time, had not considered market surveys as telemarketing by phone. Id. We also pointed out that the issue of whether paid market surveys are fax advertisements as defined by the TCPA was pending before the FCC. Id. at 134 n.3. More importantly, there is no indication of whether or not the FCC would consider paid market surveys as telemarketing.

It is an offer of payment to the recipients that transforms the solicitation of responses to market surveys into advertisements. "[A]ll commercial transactions have one thing in common: they serve to transmit economic values such as materials, products, and services from those who want to exchange them for another value, usually money, to those who need them and are willing to pay a countervalue." Commercial Transaction, Encyc. Britannica, https://www.britannica.com/topic/commercial-transaction (last visited Apr. 6, 2020); see United States v. Bishop, 66 F.3d 569, 602 (3d Cir. 1995) (Becker, J., concurring in part and dissenting in part) ("[T]he preferable definition of commercial transaction

8

requires an activity involving a voluntary economic exchange." (emphasis added)).

In our analysis it is useful to consider the case of a blood donor. Ordinarily, a person giving blood is thought to have performed a benevolent act. However, a donor may give blood at a blood bank in exchange for money. There can be no question that if a blood bank sends a fax highlighting its willingness to purchase blood for money, that fax would be an advertisement. As we stated above, any fax announcing the availability of opportunities to exchange goods or services for compensation is an advertisement within the meaning of the TCPA. Even though the act of donating blood is certainly not a commercial act it would not be a non-commercial act if the sender of the fax took steps to induce or influence the recipient by converting the donation into a commercial transaction by paying for the blood.[3]

At oral argument before us, the appellees brought to our attention two recent district court opinions, one from the Eastern District of Michigan and the other from the Southern District of New York, both holding that fax market surveys, paid or unpaid, are not advertisements for the purposes of the TCPA. Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, L.L.C., No. 19-11228, 2020 U.S. Dist. LEXIS 45181 (E.D. Mich. Mar. 16, 2020); Machonis v. Universal Survey Ctr., Inc., No. 18-10978, 2020 U.S. Dist. LEXIS 31330 (S.D.N.Y. Feb. 21,

---

[3] We realize our holding necessarily raises the question of whether a fax soliciting charitable donations would be considered an advertisement under the TCPA and therefore would be prohibited. We need not answer that question as it is not before us.

2020) (magistrate judge's report and recommendation). Neither opinion persuades us to reach a different conclusion. First, both opinions rely heavily on the same FCC interpretation of market surveys in the telemarketing by phone context we discussed above, which are significantly different than faxes, a material difference Congress itself recognized. H.R. Rep. No. 102-317, at *10 (1991) ("This type of telemarketing [by fax] is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."). We note yet another difference between the two— whereas consumers can easily and quickly end telemarketing phone calls by hanging up, rarely do fax recipients end a fax "call" prematurely. Moreover, as we noted above, the FCC has never opined on whether paid market surveys, even in the telemarketing by phone context, would be considered telemarketing.

Both opinions also highlight the concern that construing fax market surveys as advertisements would somehow hinder the important purposes market researchers serve, and significantly limit their ability to collect valuable information from consumers. This concern is contrary to the practical realities of the internet age. In fact, fax market surveys might be just about one of the least efficient forms of market surveys today. Beyond the aforementioned method of surveys by phone, now market research firms can solicit surveys via electronic mail, the world-wide web, and various other digital methods of which we, as legal jurists who admittedly are not the most technology-savvy individuals, may not even be aware. Of course, this observation begs the question as to why these market research firms would continually use this method to

10

solicit survey takers among healthcare professionals.

Plaintiffs provide us with that very answer in their briefs. Although faxes have become almost a relic of the past for most consumers, due to patient privacy laws, healthcare professionals still rely on faxes for certain communications. This, of course, renders them a very captive and easily identifiable audience, as one of the few subgroups in the population that still commonly employ the use of a fax machine. If market researchers have a method to easily identify their target audience, and effectively reach that audience in a way that is hard for the audience to ignore, one can be sure they will exploit it. That makes healthcare professionals especially vulnerable to unsolicited faxes. While the TCPA may not protect them from all unsolicited faxes, see infra, it can do so when the market researcher converts the interaction into a commercial transaction. As the Exclusively Cats court itself recognized, these firms are not offering compensation out of the goodness of their hearts—they do so for a commercial purpose, to increase the response rate of their surveys, i.e. they can buy more of what they desire. 2020 U.S. Dist. LEXIS 4181, at *5-22. Their method fits every element of liability we espoused in Optum, just in an intent to buy context. See 925 F.3d at 133.

As we alluded to above, our opinion must be cabined. We realize that a recipient may regard a fax soliciting participation in an unpaid market survey to be no less intrusive or annoying than a fax that offers to pay the recipient for participating in the survey. But as we recognized in Optum, "we are constrained in reaching our decision by what the TCPA actually prohibits—it does not prohibit all unsolicited faxes, just advertisements." Id. at 135. And the TCPA, as noted above, defines advertisement as including property, goods, or services

11

that are "commercially available." 47 U.S. § 227(a)(5). An offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA.[4]

In view of our analysis, we will reverse the District Courts' dismissals of these cases by orders dated August 26, 2019, and August 29, 2019, and remand the cases to the District Courts for further proceedings. We express no opinion as to the viability of the plaintiffs' class action claims.

---

[4] We are aware that at least one district court has construed a paid market survey as an advertisement under the TCPA. Lyngaas v. J. Reckner Assocs., No. 2:17-12867, 2019 WL 166227, at *2 (E.D. Mich. Jan. 10, 2019). Although its ruling is not authoritative, we find its rationale persuasive. See id. No. 29 at 9 ("The fax in this case calls to the attention of the public the fact that the service of survey-takers is desired by the Defendant. The fax communicates that Defendant is seeking to employ survey-takers."). We also note that another district court denied a motion to dismiss on this very issue, Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp., 232 F. Supp. 3d 1239, 1242-43 (S.D. Fla. 2017), albeit under a different rationale which we do not endorse here. Optum, 925 F.3d at 135 ("[W]e have not endorsed and do not now do so the pretext theory of liability under the TCPA[.]"). On the other hand, there is contrary district court authority. See Exclusively and Machonis, both discussed above.

JORDAN, *Circuit Judge*, dissenting.

In these consolidated appeals, my colleagues in the Majority conclude that sending a fax that offers a small honorarium in exchange for the completion of a research survey violates the TCPA. In their view, such a fax counts as "material advertising the commercial availability or quality of any property, goods, or services[.]" 47 U.S.C. § 227(a)(5). They reach that conclusion by reading into the statute words that are not there, effectively rewriting it to prohibit communications about "the availability of an opportunity… to exchange goods or services[.]" (Majority Op. at 8.) They then reason that the faxes at issue here violate the newly rewritten statute because the faxes offer to buy services in the form of responses to the surveys. As my colleagues' reading of the TCPA is supported by neither the text of the statute nor our Court's precedent, I respectfully dissent.

## I. BACKGROUND

Dr. Mauthe operates a medical practice in Pennsylvania. He is a frequent litigant; one might say he has a sub-specialty in suing people under the TCPA. *See Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, No. 19-1470, 2020 WL 1492987 (3d Cir. Mar. 25, 2020); *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129 (3d Cir. 2019); *Mauthe M.D., P.C. v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246 (3d Cir. 2019). Between August of 2014 and March of 2015, he received five faxes from ITG Market Research ("ITG"). Three of them offered $200 in exchange for an hour of Mauthe's time participating in a telephone survey about catheter usage in spinal cord injury patients. The other two faxes offered him $60 for taking a 25-minute internet survey on neurological

1

movement disorders. Both sets of faxes stated that "[t]his message is not a solicitation or advertisement for purchase/sale of any products and/or services from ITG Market Research." (ITG App. 32-37). ITG is a company that provides data to various healthcare providers to aid in their decision-making processes.

Dr. Fischbein is a psychiatrist with a private practice in Pennsylvania. In May of 2017, he received a fax from defendant Olson Research offering him $150 in exchange for his participation in a study on the management of disorders in neurological patients. Olson Research is a marketing research firm, with healthcare as one of its specialties.

## II. DISCUSSION

Neither the faxes to Mauthe nor the one to Fischbein should qualify as "unsolicited advertisements" under the TCPA. In saying that they do, the Majority makes two fundamental errors. First, it reads the text of the statute to include words that are not there, a misstep that makes all the difference. Second, it misreads our own precedent.

### A. The Statute

"Under the TCPA, it is unlawful to send an unsolicited advertisement by fax." *Optum*, 925 F.3d at 132. The word "advertisement" is crucial – the TCPA "does not prohibit all unsolicited faxes, just advertisements." *Id*. at 135. And because that statutory term is so important, the TCPA provides its own definition of "unsolicited advertisement," defining it to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express

2

invitation or permission, in writing or otherwise." 42 U.S.C. § 227(a)(5).

Armed with that statutory text, we have everything we need to decide this case. The text should lead us to conclude that the faxes presently at issue are not "unsolicited advertisements," since they do not advertise the "commercial availability or quality" of anything. Instead, they seek to *obtain* something – the doctors' survey responses. That means they are outside the scope of the TCPA. Availability, after all, means "the quality or state of being available[.]" *See* Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/availability, accessed 14 Apr. 2020. And "available," in turn, means "present or ready for immediate use[.]" *See id.*, https://www.merriam-webster.com/dictionary/available, accessed 14 Apr. 2020. Faxes offering compensation in exchange for the completion of surveys are not advertising anything that is "present or ready for immediate use." The very fact that a fax seeks to obtain something means that it is communicating the exact opposite of availability – it is stating a need for something not readily available to the sender.

That conclusion is bolstered by the federal regulations associated with the TCPA. Those regulations state that the word "sender… means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or *whose goods or services are advertised or promoted in the unsolicited advertisement*." 47 C.F.R. § 64.1200(f)(10) (emphasis added). As in the statute, the focus of the regulations is on the sale of goods or services, not on their purchase.

3

My colleagues, however, eschew a straightforward reading of the statute and substitute their own definition of "unsolicited advertisement" for the one written by Congress. They justify that substitution by saying they "do not doubt that a recipient of a fax offering to buy goods or services from the recipient would consider the fax to be an advertisement." (Majority Op. at 7.) That may be true, but what fax recipients think about the faxes they get is not legally relevant. The meaning of a statutory term does not depend on the subjective perception of litigants. That is especially so when, as here, the statute provides its own precise definition for the term in question.

The Majority goes on to note that "a fax attempting to buy goods or services is no less commercial than a fax attempting to sell goods or services to the recipient[.]" (Majority Op. at 7.) Again, that may be true. But again, it is irrelevant. "[T]he TCPA only prohibits unsolicited *advertisements*, not any and all faxes even if sent for a commercial purpose." *Optum*, 925 F.3d at 133 (emphasis in original). And, under the TCPA, a fax is only an advertisement if it advertises "the commercial *availability* or quality of any property, goods, or services[.]" 47 U.S.C. § 227(a)(5) (emphasis added). The commercial nature of a fax is only material to the extent it is connected to the availability of "property, goods, or services."[1] So an offer to buy goods may well be just as commercial in nature as an offer to sell

---

[1] In their briefing, the plaintiffs argued at length that the term "property" in the TCPA includes money, and thus that the faxes advertised the commercial availability of money. That reading strains the text to the breaking point, and the Majority correctly rejects it.

4

them, but the former does not advertise the commercial availability of a product, while the latter does. And that is the key inquiry under the TCPA.

In the end, the Majority edits the statute to proscribe advertising "the availability of an opportunity… to exchange goods or services[.]" (Majority Op. at 8.) I agree that, if the statute actually said that, it would prohibit the faxes at issue here. Perhaps the Majority's version is better than the law passed by Congress, but, since our job is to apply the laws Congress passes, I would affirm the judgments of the District Courts.

### B.    Our Precedent

I would affirm the rulings on appeal for an additional reason as well. Our own precedent, properly read, forecloses the result the Majority reaches. In *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, we confronted a similar situation and concluded that the faxes in question were *not* unsolicited advertisements. *Optum*, 925 F.3d at 134. A faithful application of that precedent to the facts at hand should lead us to affirm in these cases.

In *Optum*, just as here, the defendants were in the business of maintaining healthcare related databases. *Id.* at 131. The *Optum* defendants "market[ed], [sold], and license[d] the database typically to health care, insurance and pharmaceutical companies, who use[d] it to update their provider directories, identify potential providers to fill gaps in their network of providers, and validate information when processing insurance claims." *Id*. at 131-32. They ensured the accuracy of the database by sending faxes to healthcare

5

providers, "requesting them to respond and correct any outdated or inaccurate information." *Id*. at 132.

The plaintiffs in that case argued that the faxes were unsolicited advertisements and thus prohibited by the TCPA, but we held that "there is no basis on which defendants can be held to have violated the TCPA … if the meaning of the advertisement is viewed in a conventional way." *Id*. We concluded that just because the faxes sought to improve the quality of the sender's product did not mean that they were unsolicited advertisements as defined by the TCPA. And we established a test for determining when a fax crosses the line into forbidden advertising. For a plaintiff to successfully make the case that a fax is an unsolicited advertisement, he must "show that the sender is trying to make a sale" by demonstrating "a nexus between the fax and the purchasing decisions of an ultimate purchaser whether the recipient of the fax or a third party." *Id*. at 133. Applying that test to the facts then at hand, we held that the claims did not survive under "any… theory of liability under the TCPA." *Id*. at 134. That was because "the faxes did not attempt to influence the purchasing decisions of any potential buyer[.]" *Id*. at 135.

A simple application of *Optum* should lead to affirmance here.[2] The defendants before us also maintain

---

[2] It is true that *Optum*, in dicta, stated that "to be an ad, the fax must promote goods or services to be bought or sold[.]" *Optum*, 925 F.3d at 133. That statement is unnecessary to the holding because the faxes at issue did not seek to buy anything. In any event, we did not consistently use that language throughout. Later on, for example, we stated that "the fax must convey the impression ... that a seller is trying to make a sale[,]" and that "[t]he requirement for establishing TCPA

6

healthcare databases, and they earn their profits by selling access to those databases to third parties not implicated in these disputes. The only difference is that, in this case, the faxes offered small sums of money in exchange for completion of the surveys. But that should make no difference under *Optum*. Our analysis there turned on the lack of a nexus between the faxes and the purchasing decision of potential buyers. We nowhere mentioned a lack of monetary compensation as a significant factor in our conclusion that there was no nexus. And the faxes here equally lack that nexus. They did not seek to influence Mauthe or Fischbein in any purchasing decision. Nor did they seek to cause Mauthe or Fischbein to influence the purchasing decisions of others. The faxes were thus not "unsolicited advertisements," as that term is defined in the TCPA and was interpreted in *Optum*.

The Majority sidesteps that conclusion by saying that "an offer of payment to the recipients … transforms the solicitation of responses to market surveys into advertisements." (Majority Op. at 8.) It tries to bolster that point by citing the dictionary definition of "commercial transaction" to demonstrate that the offer of payment brings the proposed transaction into the realm of the commercial. But, as noted earlier, that reasoning lacks relevance. The TCPA does not speak to "commercial transactions." Indeed, the word "transaction" is not found anywhere in the statute. Instead, the TCPA prohibits one specific thing – the sending of "unsolicited advertisements." And, again as discussed above, that term is defined in the statute in a way disconnected from the

liability that we set forth is that there be a nexus between the sending of the fax and the sender's product or services and the buyer's decision to purchase the product or services[.]" *Id*. at 133-134 (first alteration in original).

7

Majority's atextual approach. To repeat: the proper inquiry under the TCPA is whether a fax advertises "the commercial availability or quality of any property, goods, or services[,]" 47 U.S.C. § 227(a)(5), not whether it involves a "commercial transaction."[3]

The Majority's analogy to blood donations proves the point. It is true that a blood bank offering cash in exchange for donations renders the transaction less eleemosynary than

[3] In reaching its conclusion, the Majority rejects the sound reasoning recently provided in *Exclusively Cats Veterinary Hospital, P.C. v. M/A/R/C Research, L.L.C.*, No. 19-11228, 2020 WL 1249232 (E.D. Mich. Mar. 16, 2020). The Majority does so because it says the firms involved in the cases before us and the research firm in *Exclusively Cats* "are not offering compensation out of the goodness of their hearts— they do so for a commercial purpose" and thus "[t]heir method fits every element of liability we espoused in Optum[.]" (Majority Op. at 11.) That is a puzzling assertion, since we explicitly stated in *Optum* that the TCPA does not prohibit "any and all faxes even if sent for a commercial purpose." *Optum*, 925 F.3d at 133. We were actually at pains to emphasize that, to constitute a violation of the TCPA, "[i]t is not enough that the sender sent a fax with a profit motive[.]" *Id*. Similarly, it is odd that the Majority rejects the analogy to FCC guidance that telemarketing surveys do not violate the TCPA, given our reliance on that reasoning to reach our conclusion in *Optum*. *Id*. at 134.

The *Exclusively Cats* court had it right. "Surveys, such as the one Defendant proffered to veterinarians employed at Plaintiff's firm, are offering no good or service 'for sale.'" *Exclusively Cats*, 2020 WL 1249232, at *3. They are thus outside the scope of the TCPA.

8

would be so if the blood bank relied simply on the kindness of people to secure its supply of blood. But the distinction between charitable and mercenary motives highlighted by my colleagues is nowhere featured in the TCPA. Consider two hypothetical faxes sent by a blood bank: the first seeks blood from willing donors, and the second offers money in exchange for the donations. Can either fax be said to be advertising the "commercial availability" of blood? Of course not. The blood banks do not have enough blood available. That's why they need the donations. The proffered monetary incentive does not change that fundamental point.

In sum, both the text of the statute and our prior decision in *Optum* foreclose the result the Majority reaches. It is "our job to apply faithfully the law Congress has written[.]" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017). We should do so and affirm the judgments of the District Courts. Because that is not the result here, I respectfully dissent.