**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1766
_____

MODULAR STEEL SYSTEMS INC.,
Appellant

v.

WESTFIELD INSURANCE
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 3-20-cv-01186)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 18, 2022

Before: JORDAN, KRAUSE, and PORTER, *Circuit Judges*

(Filed: March 21, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Modular Steel Systems Inc. sued its insurer, Westfield Insurance Co., for breach of contract after Westfield denied coverage under its insurance policy. The District Court granted Westfield's motion to dismiss, and we will affirm.

## I. BACKGROUND

Modular Steel is a Pennsylvania business that obtained a commercial general liability insurance policy from Westfield, an Ohio-based business. The policy's main relevant provision details Westfield's rights and obligations:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(J.A. at 131.)

The policy goes on to explain that "[t]his insurance applies to 'bodily injury' and 'property damage' only if[,]" among other requirements, "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence[.]'"[1] (J.A. at 131.) Also relevant is the policy's definition of a "suit": "a civil proceeding in which damages because of 'bodily injury' [or] 'property damage' … to which this insurance applies are alleged[,]" including "[a]n arbitration proceeding … or … [a]ny other alternative dispute resolution proceeding

---

[1] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. at 145.)

2

in which such damages are claimed and to which the insured submits with our consent."
(J.A. at 146.)

During the effective term of the policy, Modular Steel was hired to provide "prefabricated modular units" as part of the construction of a new hotel in North Brunswick, New Jersey. (J.A. at 64.) Modular Steel, in turn, subcontracted with a company called Modsets to install the modular units. Modsets was also tasked with "setting and weather-tight[en]ing" the units. (J.A. at 26.) In the course of the construction project, a storm struck, causing water damage to the units.

Modular Steel paid over $100,000 out of pocket to fix the damage, which it claims was "[i]n accordance with its contractual obligations to the owner/developer" of the construction project. (J.A. at 27.) There is no allegation that the owner/developer or anyone else pursued any legal action against Modular Steel for any damage caused by the storm. Nonetheless, Modular Steel requested coverage from Westfield under the commercial general liability insurance policy, seeking reimbursement for what it spent to repair the damage. Westfield denied coverage.

Modular Steel next filed suit against Westfield in Pennsylvania state court, and Westfield removed the suit to the District Court. Modular Steel filed an amended complaint for breach of contract and bad-faith denial of coverage. Westfield responded with a motion to dismiss for failure to state a claim.[2]

---

[2] Before briefing was complete, the parties filed a stipulated motion to dismiss the claim for bad-faith denial of coverage, which the District Court granted. **]**

3

The District Court granted the motion.[3] It reasoned that Westfield's obligation to indemnify or defend was premised on the existence of a "suit" filed against Modular Steel, but no such suit had been filed. Absent a suit, the Court concluded, Westfield had no indemnity obligation and thus did not breach the contract. Modular Steel has now appealed.

## II. DISCUSSION[4]

Modular Steel's amended complaint does not indicate that Westfield's obligations were triggered under the policy's "plain language." *Meyer v. CUNA Mut. Ins. Soc'y*, 648

---

[3] Westfield also moved to strike the amended complaint under Federal Rule of Civil Procedure 12(f), because Modular Steel's amended complaint was vastly different from the original. The District Court denied the motion to strike because "Westfield [did] not appear to have suffered any identifiable prejudice by" the significantly different amended complaint. (J.A. at 12.)

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1332(a) and 1441. We have jurisdiction pursuant to 28 U.S.C. § 1291. On appeal from a Rule 12(b)(6) motion to dismiss for failure to state a claim, our review is de novo. *Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020). "[W]e accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." *Watters v. Bd. of Sch. Dirs.*, 975 F.3d 406, 412 (3d Cir. 2020) (citation and internal quotation marks omitted). Although, in ruling on the motion to dismiss, the District Court applied the since-abrogated standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (prohibiting dismissal unless it appears beyond doubt that plaintiff can prove no set of facts entitling it to relief), that error did not affect the outcome here, because the governing standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a complaint to contain sufficient factual matter to state a claim of relief that is plausible on its face), mandates a "more heightened form of pleading" and demands more from the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

F.3d 154, 163 (3d Cir. 2011) (applying Pennsylvania law).[5] The policy obligates Westfield to "pay those sums that the insured becomes legally obligated to pay as damages[.]" (J.A. at 131.) That wording creates a duty to indemnify in commercial general liability insurance policies, pursuant to which the insurer must "protect[] the insured from liability to third parties." 3 New Appleman on Insurance Law Library Edition § 16.02[2] (Jeffrey E. Thomas ed., 2012); *see also id.* § 18.02[8][a] ("[T]he insurer agrees to indemnify the insured for damages the insured is 'legally obligated to pay.'").

Damages are "[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury[.]" *Damages*, Black's Law Dictionary (5th ed. 1979). Damages are not the loss itself. *Damage*, Black's Law Dictionary (5th ed. 1979) (Damage means "[l]oss, injury, or deterioration" and "is to be distinguished from its plural, 'damages[.]'"). Contrary to Modular Steel's argument, its unilateral decision to fix the storm damage in an effort to meet its contractual obligations for the construction project is simply not a "legal[] obligat[ion] to pay … damages[,]" as contemplated in its liability insurance policy. (J.A. at 131.) *See*

---

[5] Westfield stresses that Pennsylvania law applies, and Modular Steel does not appear to dispute that, notwithstanding its citation to some out-of-state authorities. We agree with Westfield that Pennsylvania has the strongest interest in resolving this case, and we therefore apply Pennsylvania law. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) ("Pennsylvania courts are to apply the law of the forum with the 'most interest in the problem[.]'" (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964))); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a state] must conform to those prevailing in [that state's] state courts.").

5

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("[A]n insurer's duty to … indemnify [is] determined solely from the language of *the complaint against the insured*." (emphasis added)); *Ripepi v. Am. Ins. Cos.*, 349 F.2d 300, 303 (3d Cir. 1965) ("[T]he term 'legally obligated' in [an] insurance contract comprehends the legal obligation which flows from a judgment[.]"). Westfield likewise has no duty to defend, because no "'suit' seeking … damages" was filed against Modular Steel. (J.A. at 131.)

Modular Steel relies heavily on the policy's language allowing Westfield to "settle any claim or 'suit' that may result" from an "occurrence" (J.A. at 131), arguing that it shows that a "suit" need not be filed in order for coverage to apply. That interpretation of the policy is incorrect. Westfield's right to settle a claim before the claim becomes a lawsuit – which is just that, a discretionary right, not an obligation – does not affect the separate provision governing its obligation to indemnify. That obligation applies only to "sums that [Modular Steel] becomes legally obligated to pay as damages[.]" (J.A. at 131.)

## III.  CONCLUSION

Because Modular Steel did not state a claim on which relief could be granted, we will affirm.