**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3061
_____

JOSHUA WATTERS; MOLLY POPISH; LAURIE
BURDETT,
                        Appellants

v.

BOARD OF SCHOOL DIRECTORS OF THE CITY OF
SCRANTON;
SCHOOL DISTRICT OF THE CITY OF SCRANTON
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil No. 3-18-cv-02117
District Judge:  Honorable Robert D. Mariani
_____

Argued June 16, 2020

Before:  CHAGARES, PORTER, and FISHER, <u>Circuit
Judges</u>

(Opinion Filed:  September 21, 2020)
_____

Marc L. Gelman  [ARGUED]
James Goodley
Ryan P. McCarthy
Jennings Sigmond
1835 Market Street
Suite 2800
Philadelphia, PA 19103

     Counsel for Appellants

Matthew J. Carmody
Joseph J. Joyce, III
Jennifer Menichini  [ARGUED]
Joyce Carmody & Moran
9 North Main Street
Suite 4
Pittston, PA 18640

     Counsel for Appellees

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Three Pennsylvania teachers who obtained tenure contracts under the state's Public School Code of 1949 brought a claim under 42 U.S.C. § 1983 against the City of Scranton Board of School Directors and the City of Scranton School District (collectively, the "School District"), alleging that the School District deprived them of a right secured by the United

States Constitution's Contracts Clause when it applied a Pennsylvania law, Act No. 2017-55 ("Act 55"), to suspend them from employment. Act 55 amended the Public School Code to authorize the suspension of tenured teachers for economic reasons. According to the teachers, the Contracts Clause forbids their suspensions because Act 55 took effect after they entered into tenure contracts with the School District, and the change in the law allowing for their suspensions based on economic reasons amounted to a substantial impairment of their tenure contract rights. The teachers further allege that the School District's stated justification for impairing their contracts, a budget shortage that presented serious economic difficulties, does not pass muster under the Contracts Clause because their suspensions were not a necessary or reasonable way to address the School District's financial problems.

The District Court dismissed the teachers' claim, reasoning that they failed to allege a plausible Contracts Clause violation because the School District did not substantially impair the teachers' tenure contract rights. We agree with the District Court's dismissal of the teachers' claim, but we reach that conclusion based on different grounds. We hold that the teachers failed to state a § 1983 claim premised on the Contracts Clause because their complaint and its exhibits show that the School District's suspension of the teachers was a necessary and reasonable measure to advance the School District's significant and legitimate public purpose of combatting the budget shortage that it faced. We therefore will affirm.

I.

A.

The plaintiffs, Joshua Watters, Molly Popish, and Laurie Burdett, are teachers who brought this action to challenge their suspensions from employment with the City of Scranton School District. The teachers' action against the School District involves provisions of Pennsylvania's Public School Code of 1949, 24 Pa. Cons. Stat. § 1-101 et seq., so we start by describing relevant aspects of that statute.

The Public School Code affords the status of professional employee to certified teachers who have served in a school district for three years. Id. §§ 11-1101(1), 11-1108(b)(2), 11-1121(b)(2). That status comes with certain tenure protections. For example, the Public School Code limits the valid causes for suspending or terminating tenured teachers from employment. Id. §§ 11-1122 (providing causes for termination), 11-1124 (providing causes for suspension). As relevant here, until recently, the Public School Code authorized four causes for tenured teacher suspensions. See id. § 11-1124(a)(1)–(4). Those causes allow for suspensions because of decreases in student enrollment, id. § 11-1124(a)(1), the curtailment or alteration of educational programs, id. § 11-1124(a)(2), the consolidation of schools, id. § 11-1124(a)(3), and the reorganization of school districts, id. § 11-1124(a)(4).

On November 6, 2017, however, Act 55 took effect. 2017 Pa. Legis. Serv. Act 2017-55 (H.B. 178) (West). That Act amended the Public School Code to add a fifth cause for suspension: "economic reasons" requiring a reduction in teachers. 24 Pa. Cons. Stat. § 11-1124(a)(5). The Act allows

4

for such suspensions only if certain procedures are followed. For example, a school district's board of school directors must approve suspensions under Act 55 "by a majority vote of all school directors at a public meeting." Id. § 11-1124(d)(1). In addition, Act 55 requires the board of school directors to "adopt[] a resolution of intent to suspend" the teachers in the next fiscal year. Id. § 11-1124(d)(2). That resolution must describe, inter alia, "[t]he economic conditions of the school district making the proposed suspensions necessary," id. § 11-1124(d)(2)(i), "how those economic conditions will be alleviated by the proposed suspensions," id., "[t]he impact of the proposed suspensions on academic programs to be offered to students" if the suspensions are carried out, id. § 11-1124(d)(2)(v), and the impact on such programs "if the proposed suspensions are not undertaken," id.

The Public School Code also entitles tenured teachers to written employment contracts, and it supplies certain mandatory language to be used in those contracts. Id. § 11-1121(a)–(c). The Code requires such contracts to include that they are "subject to the provisions of the 'Public School Code of 1949' and the amendments thereto." Id. § 11-1121(c). These features of the Public School Code's tenure system — a delimited set of permissible causes for suspensions, Act 55's addition of an "economic reasons" cause for suspension, and mandatory employment contracts — are the focus of the teachers' claim in this case.

B.

The teachers allege that they entered into tenure contracts with the School District and that those contracts took "substantially the same form" required by the Public School

5

Code. Appendix ("App.") 53. The Public School Code contained four permissible causes for suspension at that time. But on January 25, 2018 — after Act 55 amended the Code — the City of Scranton Board of School Directors held a special meeting, where it considered a "Resolution of the Intent to Suspend of the Scranton Board of Education." App. 54–55. Through that resolution, the Board of Education sought authorization for the School District's superintendent to send notices of the intention to suspend twenty-eight tenured teachers, including the three plaintiffs here, and all seventy-one of the School District's non-tenured teachers.

The Board of Education, in the resolution, explained the financial backdrop for the proposal to suspend some tenured teachers. It projected an approximately $4.5 million deficit for the next fiscal year, and the tenured teacher suspensions were expected to save $691,033. The Board of Education also noted that the proposal for suspensions came after it had "undertaken other cost saving measures," such as fifty layoffs of maintenance and clerical staff, "healthcare savings," "vendor savings," and "other savings." App. 66. Those cost-saving measures, however, would not provide enough money for students to "continue to receive a full complement of academic programs," and without the proposed tenured teacher suspensions, "deeper suspensions and program cuts [would] be necessary." App. 67. By a unanimous vote, the Board of School Directors passed the resolution.

On the evening that the resolution passed, the School District issued a press release about its passage of the resolution. There, the School District expressed its belief that the suspensions were "necessary for the survival and advancement of the district." App. 86. The School District

6

also recounted that "the Board of Education combed the budget for every and all cost-saving measures short of personnel actions," that "[t]he savings from this over haul [sic] of the budget was unfortunately not enough," and that the suspensions would "avoid[] more drastic educational impacts in the future." Id.

The next day, on January 26, 2018, the School District sent letters informing the tenured and non-tenured teachers subject to the resolution, including the three plaintiffs in this case, of the intention to suspend them from employment. As to the tenured teachers, the School District's letter informed them that they would be suspended at the end of August 2018 "due to the economic reasons that require a reduction of professionals." App. 55. In the meantime, the teachers could "remain on [the School District's] call back list" in case a job became available. App. 85.

In May and June 2018, the School District "engaged in a posting and bidding process designed to benefit displaced, tenured teachers." App. 56. Because of that process and other teacher resignations, the School District "was able to 'call-back'" some of the tenured teachers who had received suspension notices. Id. But as of June 22, 2018, the School District determined that seven of the twenty-eight tenured teachers who received suspension notices, including the three plaintiffs, would be suspended.

Those teachers requested hearings to challenge their suspensions. In July 2018, the Board of School Directors held evidentiary hearings on those challenges, and post-hearing briefs were submitted. The Board of School Directors later convened a special meeting on August 27, 2018 to vote on a

7

resolution approving the intended teacher suspensions, to be effective on August 30, 2018. By that time, the three plaintiff teachers were the only tenured teachers who remained subject to suspension because the other tenured teachers had found work outside the School District or were called back by the School District. The vote on the resolution approving the three teachers' suspensions initially failed, but the Board of School Directors reconvened on August 30, 2018 to hold another vote. The resolution approving the teachers' suspensions passed unanimously this time. On the same day, the School District's solicitor, who served as the hearing officer during the July evidentiary hearings, issued "Findings of Fact and Conclusions of Law." App. 57. He concluded that the "proposed suspensions should be sustained." Id.

The three teachers filed this action in the Pennsylvania Court of Common Pleas of Lackawanna County to contest their suspensions. Their challenges included two state law claims under Pennsylvania's Local Agency Law, a state law claim for a violation of the Pennsylvania Constitution's Contracts Clause, and a federal claim under 42 U.S.C. § 1983. The federal claim alleged that when the teachers obtained tenure, their contracts permitted the School District to suspend them based only on the four causes for suspension extant in the Public School Code at that time. So, the teachers asserted, the School District's reliance on Act 55's later-added "economic reasons" cause for suspension contravened their reasonable expectations about the permissible causes for suspension and thereby substantially impaired their tenure contract rights, in violation of the Contracts Clause. The teachers also claimed that the alleged impairment of their tenure contract rights could not withstand scrutiny under the Contracts Clause because that

8

measure "was not reasonable and necessary to serve an important public purpose." App. 61.

The School District removed the case to the District Court and successfully moved to dismiss with prejudice the § 1983 claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The District Court, in dismissing the federal claim, reasoned that although § 1983 confers a private right of action for Contracts Clause claims, the teachers failed to allege a Contracts Clause violation because the teachers' tenure contracts were not substantially impaired. It explained that the teachers' contracts, by their terms, were subject to the Public School Code of 1949 and its amendments, so their contracts authorized the School District to rely on the "economic reasons" cause for suspension in Act 55, an amendment to the Public School Code. The District Court thus did not reach the alternative grounds that the parties had briefed: whether the teachers' suspensions could withstand scrutiny under the Contracts Clause because they were necessary and reasonable means to advance a significant and legitimate public purpose. The court also declined to exercise supplemental jurisdiction over the teachers' remaining state law claims. The teachers timely appealed, challenging only the District Court's dismissal of their federal claim.

## II.

The District Court had jurisdiction over the teachers' federal claim under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, Fischbein v. Olson Rsch. Grp., Inc., 959 F.3d 559, 561 (3d Cir. 2020), and we may affirm based "on any ground

9

supported by the record," Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n, 934 F.3d 283, 294 n.13 (3d Cir. 2019) (quotation marks omitted), cert. denied, 140 S. Ct. 959 (2020).

When reviewing a district court's order on a Rule 12(b)(6) motion, we accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it "contain enough facts to state a claim to relief that is plausible on its face." Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018) (quotation marks omitted). The facial plausibility standard requires sufficient factual content in the complaint to "allow[] [us] to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fischbein, 959 F.3d at 561 (quotation marks omitted).

## III.

"The Contracts Clause restricts the power of States to disrupt contractual arrangements." Sveen v. Melin, 138 S. Ct. 1815, 1821 (2018). That Clause directs that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Even though "the language of the Contract[s] Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people." Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co., 459 U.S. 400, 410 (1983) (quotation marks omitted). So, to determine when a state law affecting pre-existing contracts "crosses the constitutional line," we analyze "whether the state law has operated as a substantial impairment of a contractual relationship." Sveen,

10

138 S. Ct. at 1821–22 (quotation marks omitted). If so, our "inquiry turns to the means and ends of the legislation," and we evaluate whether the state law has "a significant and legitimate public purpose," as well as whether the law "is drawn in an appropriate and reasonable way to advance" that purpose. Id. at 1822 (quotation marks omitted).

The teachers allege that the School District violated 42 U.S.C. § 1983 by depriving them of a right secured by the United States Constitution's Contracts Clause when it suspended them pursuant to Act 55. They frame their claim as a challenge to the School District's "official legislative actions as-applied to" them, and they make clear that they "are not raising a facial constitutional challenge to Act 55." Teachers Reply Br. 1–2. Because the teachers bring an as-applied claim, we must assess whether the School District's application of Act 55 to their "particular circumstances deprived [them] of a constitutional right" secured by the Contracts Clause. Tineo v. Att'y Gen., 937 F.3d 200, 210 (3d Cir. 2019) (quotation marks omitted).

We decline to decide some of the issues presented by the teachers' claim. The parties debate whether § 1983 supplies a private right of action for Contracts Clause violations and whether the School District's reliance on Act 55's "economic reasons" cause for suspension amounted to a substantial impairment of the teachers' tenure contract rights, given that Act 55 added that new cause after the teachers entered into their contracts.[1] We will assume for purposes of

---

[1] At oral argument, we asked counsel to file supplemental papers addressing whether the teachers' complaint supports the

this appeal that § 1983 confers a private right of action premised on the type of Contracts Clause claim that the teachers bring[2] and that the School District's application of Act

allegation that the Public School Code was amended and applied to them after they had achieved tenure because it appeared, on the face of the complaint, that at least one of the teachers had not obtained tenure until after Act 55's enactment. Although the School District, in its supplemental filing, raised some factual disputes bearing on that question, we need not address them because we will resolve this case on different grounds.

[2]    The School District posits that the teachers' § 1983 claim fails because § 1983 does not provide a private right of action for Contracts Clause violations. Our sister Courts of Appeals are divided on that issue. Compare Kaminski v. Coulter, 865 F.3d 339, 346, 347 (6th Cir. 2017) (holding that the Contracts Clause is "a structural limitation placed upon the power of the States," so "an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983"), with Crosby v. City of Gastonia, 635 F.3d 634, 640 (4th Cir. 2011) (concluding that "recourse to § 1983 for the deprivation of rights secured by the Contracts Clause is limited to the discrete instances where a state has denied a citizen the opportunity to seek adjudication through the courts as to whether a constitutional impairment of a contract has occurred, or has foreclosed the imposition of an adequate remedy for an established impairment"), and S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003) (ruling that § 1983 provides a private right of action premised on a Contracts Clause violation when "a State, or a political subdivision thereof, impair[s] its obligations of contract"); see also Elliott

12

55 to the teachers substantially impaired the teachers' tenure contract rights. Further, there is no dispute that the teachers' suspensions under Act 55 advanced a significant and legitimate public purpose by mitigating the School District's "serious economic difficulties." School District Br. 50; see also Oral Arg. Tr. 17:2–15; cf. Energy Rsrvs., 459 U.S. at 411–12 (observing that "a significant and legitimate public purpose behind [a] regulation" includes "the remedying of a broad and general social or economic problem"). Rather than rely upon those bases, we reach different grounds addressed by the parties on appeal. We conclude that the teachers failed to state a § 1983 claim premised on a Contracts Clause violation because the School District's suspensions of the teachers under Act 55 were an "appropriate and reasonable way to advance" the School District's purpose of alleviating its budget difficulties. Sveen, 138 S. Ct. at 1822 (quotation marks omitted).

When assessing the appropriateness and reasonableness of a state's alleged impairment of contracts, we consider whether the state's action was "necessary" and "reasonable." U.S. Tr. Co. v. New Jersey, 431 U.S. 1, 25 (1977); see also United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union v. Gov't of V.I., 842 F.3d 201, 211 (3d Cir. 2016) ("Once a legitimate public purpose has been identified, we must then decide whether the impairment is both necessary and reasonable to meet the purpose advanced by the [state] in justification."). If a state impairs a contract between private parties, "the [s]tate is ordinarily entitled to deference in

_____

v. Bd. of Sch. Trs. of Madison Consol. Schs., 876 F.3d 926, 931–32 (7th Cir. 2017) (acknowledging the split in the Courts of Appeals but declining to answer the question).

13

its legislative judgment." United Steel, 842 F.3d at 212. But where, as here, a state actor is a party to the contract at issue, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the [s]tate's self-interest is at stake." U.S. Tr., 431 U.S. at 26. So when a state actor "is a contracting party," its "judgment is subject to stricter scrutiny than when the legislation affects only private contracts." United Steel, 842 F.3d at 212 (quotation marks omitted). Even with that "more exacting scrutiny, some deference is appropriate." Id.

A.

We first consider whether the School District's application of Act 55 to suspend the teachers was necessary. In determining whether an alleged "impairment was necessary, our task is two-fold." United Steel, 842 F.3d at 212. We must ensure that the School District did not (1) "consider impairing the obligations of [its] contracts on a par with other policy alternatives," or (2) "impose[] a drastic impairment when an evident and more moderate course would serve its purposes equally well." Id. (quotation marks omitted).

The teachers argue that their suspensions under Act 55 were not necessary, reasoning that the School District could have resorted to "any one of an innumerable amount of cost saving measures that would not substantially impair" the teachers' tenure contracts. Teachers Reply Br. 27. We are not convinced. The teachers' complaint illustrates that the suspensions were "necessary for the survival and advancement of the district" because the "Board of Education [had] combed the budget for every and all cost-saving measures short of personnel actions," only to find that the "savings" from that

14

"over haul [sic] of the budget was . . . not enough." App. 86. According to the complaint, then, the School District did not consider impairing the teachers' contracts on a par with other policy alternatives, and it did not resort to that measure when a more moderate course would serve its purposes equally well. Based on the complaint and its exhibits, the School District's application of Act 55 to the teachers was necessary for the School District to alleviate its budget shortage.

B.

We turn to whether the School District's application of Act 55 to the teachers was reasonable "in light of the surrounding circumstances." U.S. Tr., 431 U.S. at 31. The School District contends that its actions were reasonable because it followed Act 55's procedures, which reflected the Pennsylvania legislature's judgment about the care that must be given before suspending tenured teachers from employment for economic reasons. For example, the School District points out that it provided "detailed information regarding the economic reasons for the [suspensions]," "identified a number of proposed revenue and expenditure adjustments" besides tenured teacher suspensions, and gave careful consideration to the suspension of tenured teachers before embarking on that course. School District Br. 49–50.

The complaint and its exhibits indeed explain that the School District gave effect to the teachers' suspensions only after holding a public meeting and vote on the issue, accounting for the economic conditions that made the teachers' suspensions necessary, and considering how the proposed suspensions would alleviate those conditions. The complaint also illustrates that the School District afforded the teachers the

15

opportunity to contest their suspensions through evidentiary hearings and post-hearing submissions. The steps that the School District took before suspending the teachers, geared toward ensuring that its financial condition, in fact, justified those suspensions, counsel in favor of concluding that the School District acted reasonably in advancing its significant and legitimate public purpose of reducing its budget deficit.

The teachers dispute that the School District acted reasonably for one reason. They contend that "[w]hen the problem which [the state] seeks to redress significantly pre-dates the change in state law causing the contractual impairment," then a state's substantial impairment of a contractual relationship is not reasonable and violates the Contracts Clause. Teachers Reply Br. 26. From that legal premise, the teachers argue that the School District's application of Act 55 to them cannot be justified as reasonable because the School District's "claims of budgetary difficulties predate" the enactment of Act 55 in 2017 and their suspensions in 2018. Id. (capitalization omitted).

The legal premise of the teachers' argument is incorrect. The argument presumes that for the reasonableness inquiry, we look to whether the problem that the School District sought to remedy preceded the alleged contractual impairment. The relevant question, however, is different. We consider whether "the problem sought to be resolved by an impairment of the contract existed at the time the contractual obligation was incurred." United Steel, 842 F.3d at 213 (emphasis added); see also U.S. Tr., 431 U.S. at 31–32 (considering whether changed circumstances caused a "covenant to have a substantially different impact" than those impacts that were foreseen when the covenant "was adopted").

16

The teachers' complaint indicates that it was not until 2018 — after the teachers had obtained tenure contracts — that the School District faced a substantial budget deficit, creating a financial crisis for it. So it was in 2018 when the Board of Education concluded that reducing that deficit through tenured teacher suspensions would be necessary to "avoid[] more drastic educational impacts in the future." App. 86; cf. United Steel, 842 F.3d at 214 (reasoning that a budget "crisis" could not justify the Virgin Islands government's substantial impairment of contracts because when the government entered into the contracts at issue, it "knew it was facing severe budget deficits and that the financial condition of the Virgin Islands was precarious"). Even more, the teachers concede that, notwithstanding the Rule 12(b)(6) posture of this case, additional factual development is not necessary to evaluate their claim. Yet the complaint and its exhibits do not support that when the School District adopted the teachers' tenure contracts, it could foresee that its contractual obligations might create the kind of budget crisis it encountered in 2018, putting a strain on its ability to provide a full swath of academic programs to its students. The School District's application of Act 55 to the teachers was reasonable in light of the surrounding circumstances.[3]

---

[3] The teachers cite Elliott v. Board of School Trustees of Madison Consolidated Schools, 876 F.3d 926 (7th Cir. 2017), to support their claim that the School District's application of Act 55 to them violated the Contracts Clause. In that decision, the Court of Appeals for the Seventh Circuit held that an Indiana statute, which "cut back on the rights of tenured teachers in layoffs," violated the Contracts Clause when applied to a teacher who achieved tenure before the statute took

17

\*    \*    \*    \*    \*

We conclude, based on the complaint and its exhibits, that the School District's application of Act 55 to the teachers was an appropriate and reasonable way to advance its significant and legitimate public purpose of addressing its budget shortfall, a determination buttressed by the limited deference that we must give to the School District's judgment. Accordingly, the teachers' complaint fails to state a § 1983 claim premised on a Contracts Clause violation.

## IV.

For the foregoing reasons, we will affirm the District Court's order dismissing with prejudice the teachers' § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

effect. Id. at 928, 931, 939. The Elliott case is inapposite because there, the state of Indiana failed to show, in the circumstances of that case, that it "need[ed] to impose [a] retroactive impairment of its earlier promises of job security," and the "impairment" was "not reasonable" because there were "no changed circumstances that impose[d] unforeseen advantages or burdens on the parties." Id. at 938–39 (quotation marks omitted). For the reasons that we have given, here, the School District's application of Act 55 was necessary and reasonable.