**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 20-1007

---

GERARD KENNEY; ALEXA JOSHUA;
GLEN DELA CRUZ MANALO;
KATHERINE MURRAY LEISURE,
Appellants

v.

AMERICAN BOARD OF INTERNAL MEDICINE

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-18-cv-05260)
District Judge: Honorable Wendy Beetlestone

---

Argued October 22, 2020

---

Before: CHAGARES, GREENAWAY, JR., and NYGAARD, *Circuit Judges*.

(Opinion Filed: February 25, 2021)

Katrina Carroll, Esq.
Carlson Lynch
111 West Washington Street
Suite 1240
Chicago, IL 60602

Gary F. Lynch, Esq.
Carlson Lynch
1133 Penn Avenue
5th Floor

Pittsburgh, PA 15222

Alan F. Curley, Esq.
C. Philip Curley, Esq. [*Argued*]
Cynthia H. Hyndman, Esq.
Robinson Curley
300 South Wacker Drive
Suite 1700
Chicago, IL 60606

Mindee J. Reuben, Esq.
Lite DePalma Greenberg
1835 Market Street
Suite 2700
Philadelphia, PA 19103
*Attorneys for Appellants*

Leslie E. John, Esq. [*Argued*]
Jason A. Leckerman, Esq.
Mansi Shah, Esq.
Elizabeth P. Weissert, Esq.
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103
*Attorneys for Appellee*

Eamon P. Joyce, Esq.
Sidley Austin
787 Seventh Avenue
New York, NY 10019
*Attorney for Amici Appellee*

OPINION[*]

GREENAWAY, JR., *Circuit Judge*.

Plaintiffs, Gerard Kenney, Alexa Joshua, Glen Dela Cruz Manalo, and Katherine Murray Leisure, physicians with specialties in internal medicine, brought suit against the American Board of Internal Medicine (ABIM) alleging violations of Sections 1 and 2 of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), and a claim for unjust enrichment. The gravamen of their complaint is that ABIM forces internists who purchase an initial certification to also purchase ABIM's maintenance of certification product. The District Court dismissed all of Plaintiffs' claims. We will affirm.

## I. Background

### A. ABIM, Certifications, and MOC

ABIM is a non-profit organization led by a board of physicians and is a member of the American Board of Medical Specialties (ABMS), which is comprised of twenty-four medical boards that certify physicians in certain specialties and subspecialties. ABIM began offering a certification in 1936. No state medical licensing board requires a

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

physician to be certified by ABIM to be licensed to practice internal medicine within that state.

Initially, ABIM offered lifetime certifications that did not require physicians to take additional examinations or complete other requirements to maintain the certification. In the 1970s, ABIM introduced a program called Continuous Professional Development (CPD), which included a voluntary examination.

In 1990, ABIM began to offer time-limited certifications, which required internists to pass a mandatory examination and complete other requirements every ten years to maintain their ABIM certification. This program of additional requirements and an examination is generally known as maintenance of certification (MOC). Internists who were certified prior to 1990 were "grandfathered" in and were not required to participate in MOC to maintain their certifications.

MOC requirements have changed over time, and in 2018, ABIM modified MOC to its current form. Today, ABIM-certified internists are required to pay an annual program fee as well as an "assessment fee" for MOC examinations. In addition, internists who participate in MOC have the option of either taking a test every two years or taking a must-pass examination every ten years. An internist who was initially certified in 1990 or after but does not complete the requisite MOC is listed on the ABIM website as "Not Certified." Internists who were certified by ABIM prior to 1990 continue to be grandfathered in and are not required to participate in MOC to maintain their certification.

### B. NBPAS

Plaintiffs allege that the National Board of Physicians and Surgeons (NBPAS) is a competitor of ABIM in the market for maintenance of certification. NBPAS was established in 2015 and provides MOC-type products to physicians practicing in a variety of specialties, including internal medicine. NBPAS does not offer an initial certification in internal medicine or any other specialty. To obtain a MOC-type product from NBPAS, a physician must: (1) hold a certification from an ABMS member board, (2) hold a valid state license to practice medicine, and (3) have completed a certain number of hours of continuing medical education (CME). NBPAS's fees for its MOC-type products are lower than ABIM's MOC fees, and NBPAS's MOC-type products require less of a physician's time than ABIM's MOC.

### C. Plaintiffs

Dr. Kenney was initially certified by ABIM in 1993 and obtained a gastroenterology subspecialty certification in 1995. In 2007, Dr. Kenney passed a required MOC examination. Later, Dr. Kenney decided to not take the MOC examination again, which resulted in his subspecialty certification expiring on December 31, 2017. In late 2017, while employed in private practice, Dr. Kenney received an offer of employment from another practice group. This potential employer required Dr. Kenney to maintain his ABIM certification. Dr. Kenney ultimately decided to decline the offer of employment because of the complications arising from complying with the requirement to maintain his ABIM certification.

Dr. Joshua was certified by ABIM in internal medicine in 2003. In 2009, one of Dr. Joshua's employers mandated that physicians had to maintain their certifications from medical boards that issued time-limited certifications. Dr. Joshua did not pass a MOC examination in 2014, and therefore, her certification in internal medicine was terminated. Two years later, an insurance company informed Dr. Joshua that it would no longer cover her because it required her to be certified by ABIM. In December 2017, Dr. Joshua's privileges at a hospital expired because of her lapsed ABIM certification, and she was limited to providing only outpatient care to that hospital's patients.

Dr. Manalo was initially certified by ABIM in 1997, and he received a gastroenterology subspecialty certification in 2000. Dr. Manalo decided not to purchase MOC; therefore, his internal medicine certification was terminated in 2007 and his subspecialty certification was terminated in December 2010. Dr. Manalo's employer informed him that he would lose staff privileges unless his certifications were maintained, as required by the bylaws of the organization. Dr. Manalo offered to take CME courses in lieu of MOC and maintain the certifications, but his employer rejected this alternative. Dr. Manalo's employment was terminated in December 2010 because of his lapsed ABIM certifications. Dr. Manalo secured employment in April 2011 and remained with that employer until April 2017. Dr. Manalo has been unemployed since 2017 with prospective employers informing him that "they only recognized ABIM certification and MOC." Am. Compl. ¶ 101.

Dr. Murray-Leisure obtained an internal medicine certification from ABIM in 1984. She obtained an infectious disease subspecialty certification from ABIM in 1990 and purchased MOC to maintain that certification in 2000 and 2010. In 2010, Dr. Murray-Leisure moved to Massachusetts and began working at a hospital that required physicians with staff privileges, like her, to maintain ABIM certifications in their subspecialties. Dr. Murray-Leisure's subspecialty certification was terminated as a result of her not passing the required examination. This resulted in the hospital revoking her infectious diseases privileges. In 2012, Dr. Murray-Leisure passed the MOC examination resulting in her subspecialty certification and privileges being reinstated.

**D. Plaintiffs' RICO Allegations**

In support of their RICO claim, Plaintiffs allege that ABIM "knowingly made fraudulent, false, and misleading statements of fact about MOC to the public." *Id.* ¶ 133. These include a statement in a 1999 ABIM newsletter that "the current certification process and the new evolving recertification initiative which is dedicated to continued professional development serve those needs and produce a reliable indicator of physician quality." *Id.* ¶ 134. Plaintiffs allege that because the statement was made before the first MOC examination was administered, it was impossible for ABIM to know whether MOC would be "a reliable indicator of physician quality." *Id.* Plaintiffs also allege that certain statements on ABIM's website are fraudulent, false, and misleading.

Plaintiffs allege that statements made by ABIM's former President and a former member of the ABIM Board of Directors regarding MOC constituting "self-regulation"

are actionable. Per Plaintiffs, MOC does not constitute self-regulation because (1) not meeting MOC requirements does not result in a loss or suspension of licensure—state medical boards are "the only relevant self-regulatory bodies[,]" and (2) ABIM is not a "self-regulatory" body because it lacks accountability as it is not subject to oversight. *Id.* ¶¶ 155–56.

The District Court dismissed all of Plaintiffs' claims. Specifically, the District Court found that Plaintiffs' failure to plausibly allege that "ABIM's initial certification and MOC products . . . occupy distinct markets" was fatal to the Section 1 claim, which was dismissed with prejudice. *Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530, 545 (E.D. Pa. 2019). As to the Section 2 claim, the District Court concluded that ABIM could not have monopoly power in the MOC market because no such market exists. *Id.* at 548. The District Court also addressed two allegations related to an "overall certification market" and found those allegations were insufficient to sustain Plaintiffs' Section 2 claim, which was dismissed without prejudice. *Id.* at 548–49. Plaintiffs' RICO claims were also dismissed without prejudice because the District Court found that "ABIM's alleged fraudulent statements [were] too attenuated" from the many reasons that Plaintiffs' employers may have required Plaintiffs to hold an ABIM certification "to substantiate a claim." *Id.* at 551. The District Court dismissed the unjust enrichment claim with prejudice because the District Court found that it would not be inequitable for ABIM to retain the benefits it received from Plaintiffs as ABIM had not forced Plaintiffs to purchase MOC. Plaintiffs did not amend their complaint to replead the Section 2 and

RICO claims, and the District Court entered a final judgment and order against Plaintiffs. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over the Sherman Act and RICO claims pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over the unjust enrichment claim pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299 (3d Cir. 2020). "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks and citation omitted). To withstand a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## III. Discussion

### A. Plaintiffs' Section 1 Tying Claims

Section 1 of the Sherman Act provides, in relevant part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or

commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. A tying arrangement that violates Section 1 is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 80 (3d Cir. 2011) (quoting *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 213 (3d Cir. 2005)) ("Tying is selling one good (the tying product) on the condition that the buyer also purchase another, separate good (the tied product).").

The elements of a *per se* tying claim are satisfied "where (1) a defendant seller ties two distinct products; (2) the seller possesses market power in the tying product market; and (3) a substantial amount of interstate commerce is affected . . . ." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 477 (3d Cir. 1992); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 512–13 (3d Cir. 1998). A rule of reason tying claim requires a showing that the alleged tie "unreasonably restrained competition[,]" which "necessarily involves an inquiry into the actual effect of the [challenged conduct] on competition [in the tied market]." *Brokerage Concepts*, 140 F.3d at 519 (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984)).

The District Court did not consider each element of the *per se* tying claim as it concluded that the claim failed on the first element. *See Kenney*, 412 F. Supp. 3d at 547. Plaintiffs object to the District Court's finding, arguing that they have "alleged facts showing certifications and MOC are separate products and have also alleged all other

elements of a *per se* tying claim." Appellants' Br. 24. We disagree with Plaintiffs and, like the District Court, confine our analysis to whether Plaintiffs have plausibly alleged that ABIM's initial certifications and MOC are separate products.

"[T]he answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." *Jefferson Par.*, 466 U.S. at 19. "[A] tying arrangement cannot exist unless there is a sufficient demand for the purchase of the tied product separate from the purchase of the tying product so as to identify a market structure in which it is efficient to offer the tied product separately from the tying product." *Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 211 (3d Cir. 1994).

Plaintiffs contend that *Jefferson Parish* and *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), set forth "factual indicia of separate demand governing the separate product analysis," and that their complaint contains "alleged facts supporting each such indicia." Appellants' Br. 12, 17. Specifically, Plaintiffs aver that "[1] internists differentiate between certifications and MOC; [2] ABIM has always sold them separately; [3] ABIM treats the two products as separate; [4] ABIM bills and accounts for certifications and MOC separately; and [5] other vendors sell CPD products like MOC that keep internists current without selling certifications." *Id.* at 12.

However, whether considered individually or collectively, these alleged indicia do not support a conclusion that Plaintiffs have plausibly alleged that ABIM's initial certification and MOC are separate products.

### 1. *Consumer Differentiation*

Plaintiffs first contend that they have alleged that "consumers (internists) differentiate between certification and MOC[,]" and support this proposition with citations to paragraphs of the Amended Complaint. Appellants' Br. 25. These paragraphs, however, do not bear the weight of Plaintiffs' contention.

For example, Plaintiffs cite paragraphs 55 and 66 to support the proposition that "internists prefer to purchase CPD products like MOC separate from certifications." *Id.* These paragraphs simply allege that "[i]nternists have a desire to obtain maintenance of certification from providers other than ABIM," Am. Compl. ¶ 55, and that "[n]umerous board certified internists do not want to be required to buy ABIM's MOC and/or would seek maintenance of certification from a source other than ABIM[,]" *id.* ¶ 66. Neither allegation sheds light on whether there is consumer demand to purchase ABIM's MOC product because the Court must infer that the products are sufficiently similar such that consumer demand for products other than ABIM's MOC reflects consumer demand for ABIM's MOC. The Court cannot draw that inference given Plaintiffs' allegations regarding material differences between ABIM's MOC and other products. *See id.* ¶¶ 32–35, 57, 59. Given the alleged differences between the products, the demand for products

other than ABIM's MOC appears to be irrelevant to the Court's analysis of whether there is separate demand for ABIM's MOC and initial certifications.[1]

Plaintiffs also support their differentiation argument by contending that ABIM's grandfathering of internists who were certified prior to 1990 is "[e]specially probative." Appellants' Br. 26. Plaintiffs, however, do not explain how this allegation is probative of consumer demand for MOC and initial certification.[2] The obvious inference the Court can draw from this allegation is that the purchase of a lifelong certification is evidence of demand for that product. This inference, however, does not support Plaintiffs' separate demand argument because demand for lifelong certifications does not equal separate demand for time-limited certifications or MOC, especially in light of Plaintiffs' argument that ABIM's MOC is not a component of a single product. Appellants' Br. 30.

### 2. *Selling Initial Certifications and MOC Separately*

Relying on *Kodak* and *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc.*, 63 F.3d 1540 (10th Cir. 1995),

[1] Plaintiffs also argue that internists' purchase of "CPD products from CME vendors for state licensure purposes" is confirmation of consumer differentiation. Appellants' Br. 26. This argument is unavailing for the reasons discussed above. Similarly, Plaintiffs' argument that "[o]ther vendors sell CPD products without selling certifications" is a supply-side version of the same unpersuasive argument. Appellants' Br. 37.

[2] On reply, Plaintiffs provide a lengthy explication of the probative value of ABIM's grandfathering policy. Appellants' Reply 19–20. However, "arguments raised in passing . . . but not squarely argued, are considered [forfeited]." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *see also In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (holding that arguments not developed in an appellant's opening brief are forfeited).

Plaintiffs suggest that the sale of initial certifications and MOC separately is evidence of separate demand. Plaintiffs' reliance on those cases, however, elides a critical difference between the products and services at issue in those cases and those at issue in the instant matter: the efforts required to secure an initial certification and MOC. Plaintiffs allege that to secure an ABIM initial certification, an individual must be a physician who has completed "intensive study, self-assessment and evaluation" in addition to training in internal medicine. Am. Compl. ¶ 21. ABIM's MOC, similarly, requires physicians to complete a number of activities including: a regular MOC Activity, patient safety and survey programs, physician self-evaluations, as well as taking and passing examinations. Thus, initial certifications and MOC are earned and reflect a physician's initial training and his or her "staying current with knowledge and practice in his[ or ]her discipline." Am. Compl. ¶ 53. Thus, the context in which initial certifications and MOC are purchased is not the same as the consumer and commercial transactions involving the products and services at issue in *Kodak* and *Multistate Legal*.[3] As a result, the fact that the products at issue in this matter are purchased in separate transactions (at disparate

---

[3] At issue in *Kodak* was (1) parts for complex business machines and (2) service for the same machines. *Kodak*, 504 U.S. at 459. At issue in *Multistate* was (1) "full-service" courses designed to prepare students for all aspects of state's bar exam and (2) "supplemental multistate workshops" to prepare students for only a portion of a state's bar exam. *Multistate*, 63 F.3d at 1544.

times, often years apart) provides far less support for the conclusion that there is separate demand for each product as the Supreme Court concluded in *Kodak*.[4]

### 3. ABIM's Treatment of Initial Certifications and MOC

Plaintiffs argue that statements contained in ABIM's Internal Revenue Service filings and ABIM's grandfathering policy establish that ABIM treats initial certification and MOC as separate products. Plaintiffs allege that ABIM describes initial certifications as "demonstrat[ing] that physicians have completed internal medicine and subspecialty training and have met rigorous standards through intensive study, self-assessment" while MOC '"means something different from initial certification' and 'speaks to the question of whether or not an internist is staying current with knowledge and practice in his/her discipline[.]"' Am. Compl. ¶¶ 21, 53. Interpreting these statements to stand for the proposition that initial certifications and MOC are separate products inappropriately divorces them from the reality that ABIM initially certifies a physician in recognition of their training and skills at one point in time and successful completion of MOC requirements allows a physician to continue to hold themselves out as certified by ABIM

---

[4] Plaintiffs' heavy reliance on *Multistate Legal* is misplaced. In that case, the Tenth Circuit cited eight categories of evidence regarding whether the products at issue were separate products and the fact that the products were sold separately was only one of the eight categories identified and was not dispositive. 63 F.3d at 1547–48. The Tenth Circuit did not analyze this evidence; rather, it concluded that the evidence was sufficient to create a material factual dispute as to consumer demand, which required remand to the district court for resolution. *Id.* at 1548. Here, the Court must decide whether Plaintiffs have plausibly alleged separate demand for two products and the Court need not accept Plaintiffs' legal conclusions.

at a later point in time. Thus, the factual statement that initial certifications and MOC are "different" does not establish that there is separate demand for each.

Relying on the *Jefferson Parish* Court's discussion of the defendant's billing practices, Plaintiffs argue that ABIM's billing and accounting of initial certifications and MOC is an indicator of separate demand.[5] *Jefferson Parish* provides no support for Plaintiffs' billing-related argument. A close reading of the discussion upon which Plaintiffs rely reveals that the point being made by the Supreme Court was that while the hospital bundled the anesthesiologic services with other services in one package to its patients (i.e., insisting that its patients purchase anesthesiological services from the hospital's designated provider), the hospital, "[a]s a matter of actual practice," billed anesthesiological services separately from the other of services it provided. *Jefferson Par.*, 466 U.S. at 22.

Here, ABIM does not offer a bundle of services from which MOC is billed separately. Instead, initial certifications and MOC are purchased separately, often years apart. The fact that these purchases are years apart could lead to a conclusion that initial certifications and MOC are separate products. That conclusion, however, would be facile. Plaintiffs allege that ABIM represents that MOC is structured to reflect a physician's continuing expertise (over the decade after initial certification) and ultimately

---

[5] Plaintiffs do not explain how ABIM's internal accounting practices are relevant to the separate products analysis. Even if Plaintiffs had made an argument on this point, it would have likely failed because ABIM's internal accounting practices neither provide any information nor allow the Court to draw any interferences about the character of consumer demand for initial certifications and MOC.

reflects the same thing that initial certification represents—that the physician presently meets ABIM's standard for certification. Thus, the relationship between initial certifications and MOC is vastly different than the relationship between anesthesiological services and healthcare services, which were delivered at the same time and billed separately, that were at issue in *Jefferson Parish*.

In sum, when viewed on their own, none of the allegations that Plaintiffs identify as factual indicia of separate demand allow the Court to conclude that Plaintiffs have plausibly alleged that there is separate demand for initial certifications and MOC. When viewed in combination, the indicia fare no better. As a result, we conclude that Plaintiffs failed to plausibly allege the first element of a *per se* tying claim—the tying of two distinct products. The failure to plausibly allege separate products is also fatal to Plaintiffs' rule of reason tying claim.[6] *See Brokerage Concepts*, 140 F.3d at 511 (when bringing a rule of reason tying claim, the plaintiff has the burden of showing the tie "unreasonably restrained competition in the tied product market").

**B. Plaintiffs' Section 2 Claim**

Section 2 of the Sherman Act targets "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2. A Section 2 claim has two elements: "(1) the possession of

[6] While the District Court did not consider Plaintiffs' rule of reason tying claim, we need not remand to the District Court for consideration of that claim.

monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).

The District Court dismissed Plaintiffs' Section 2 monopolization claim, concluding that because MOC is not a separate product and there was no separate market, "ABIM cannot have a monopoly in a market that does not exist." *Kenney*, 412 F. Supp. 3d at 548. Plaintiffs concede that the relevant market for their Section 2 claim is the same MOC market for their Section 1 claim. Given the Court's conclusion that Plaintiffs have failed to plausibly allege that initial certifications and MOC are separate products, the Court also concludes that Plaintiffs have not plausibly alleged the existence of a MOC market, which is required to plausibly allege a Section 2 claim. Therefore, we will affirm the District Court's dismissal of Plaintiffs' Section 2 claim.

**C. Plaintiffs' RICO Claim**

Section 1964(c) of Title 18 of the United States Code provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962," which provides, in pertinent part, that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). A plaintiff bringing a RICO claim must have Article III standing

and "state an injury to business or property and 'that a RICO predicate offense not only was a but for' cause of injury, but was the proximate cause as well.'" *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)).

The District Court dismissed Plaintiffs' RICO claim, finding that Plaintiffs failed to plausibly allege that ABIM's actions were the proximate cause of Plaintiffs' alleged injuries. *Kenney*, 412 F. Supp. 3d at 551 (finding that "ABIM's alleged fraudulent statements [were] too attenuated [from the many reasons Plaintiffs' employers may have required Plaintiffs to hold an ABIM certification] to substantiate a claim"). Plaintiffs argue that the District Court "misapplied" binding precedent, because this is not a case where their injuries are "indirect and only derivative of" ABIM's predicate acts. Appellants' Br. at 61. Rather, Plaintiffs and other internists are "the targets and 'immediate victims' of ABIM's RICO scheme[.]" *Id*. at 62.

Whether ABIM's conduct is the proximate cause of Plaintiffs' alleged injuries and whether the chain of causation is broken by the decisions of Plaintiffs' employers and others are questions that the Court need not consider because we discern a more fundamental issue with Plaintiffs' RICO-related allegations. In its motion to dismiss, ABIM argued that Plaintiffs' RICO claim was subject to dismissal for failure to comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). We agree with ABIM.

Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." When a party relies on a violation of the mail and wire fraud statutes as a predicate offense for an alleged RICO violation, as Plaintiffs do here, the complaint must comply with Rule 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004). Plaintiffs may satisfy this requirement by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* at 224. In the context of a putative class action, prior to class certification, the complaint must be evaluated as to the named plaintiffs, and failure to plead with the requisite specificity as to the named plaintiffs is fatal to the plaintiffs' claim. *See Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 657–59 (3d Cir. 1998).

In *Rolo*, the plaintiffs alleged that certain defendants engaged in "a fraudulent marketing scheme to sell real estate[,]" which involved "lavish 'investment seminars' at which [a defendant] represented that the value of the real estate continually appreciated, that there was a good resale market for the lots and houses, and that the real estate was an excellent investment." *Rolo*, 155 F.3d at 648. The scheme also involved allegedly fraudulent mailings. *Id.* at 658–59. The Court found that "the Complaint lack[ed] any specific allegations about the presentations made to any of the named plaintiffs" and did not include any specifics about seminars the named plaintiffs attended, "including who made the presentation, when it took place, or with reference to what property it was made." *Id.* at 658. The same was true for the allegedly fraudulent mailings as they

lacked information about "when, by whom, and to whom a mailing was sent, and the precise content of each particular mailing [was] not detailed." *Id.* at 659.

Here, Plaintiffs allege that ABIM made fraudulent, false, and misleading statements that fit into two categories: (1) statements of fact about MOC and (2) statements that MOC constitutes self-regulation. In the first category, Plaintiffs allege that in an ABIM newsletter dated Summer 1999, ABIM's then-Chair stated that "the current certification process and the new evolving recertification initiative which is dedicated to continued professional development serve those needs and produce a reliable indicator of physician quality." Am. Compl. ¶ 134. Plaintiffs also identify approximately six statements made by ABIM on its website as fitting into the first category of statements. In the second category, Plaintiffs allege that in a 2012 article published in the *New England Journal of Medicine,* ABIM's former president stated that "[t]he privilege of professional self-regulation is granted by society[,]" and this statement was in reference to MOC. *Id.* ¶ 154. Plaintiffs also allege, without providing the specific language used, that an individual who was no longer a member of the ABIM Board of Directors stated "in a 2017 *Journal of the American Medical Association* article that MOC constitutes self-regulation by the medical profession." *Id.*

Plaintiffs failed to satisfy the particularity requirements of Rule 9(b). Plaintiffs' allegations regarding statements on the ABIM website are facially deficient for failing to identify the date and time of when the statements were made (i.e., when the statements were published on ABIM's website). Assuming that statements identified only by an

approximate time period of publication and the name of the publication in which the statements are made is sufficient to satisfy the date, time, and place requirement, Plaintiffs' allegations are nonetheless deficient. Plaintiffs do not allege that they individually read or heard these statements. Nor do Plaintiffs allege that any of their employers or potentials employers read or heard these statements.

Plaintiffs argued that they alleged that "third parties, hospitals, and insurance companies heard and believed those statements." Oral Arg. at 12:36–12:56. Such broad allegations are in the Complaint. Nevertheless, Rule 9(b) requires Plaintiffs to plead with more particularity than merely alleging misrepresentations were made to large swaths of the healthcare industry. *See Rolo*, 155 F.3d at 659 (affirming dismissal of the plaintiffs' RICO claim for failing to allege what actually happened to the named plaintiffs in relation to the alleged fraudulent statements).

Because Plaintiffs failed to satisfy the particularity requirements of Rule 9, we will affirm the District Court's dismissal of Plaintiffs' RICO claim. *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020) ("[W]e may affirm based on any ground supported by the record." (internal quotation marks and citation omitted)).

### D. Plaintiffs' Unjust Enrichment Claim

"The elements of unjust enrichment are [1]'benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Styer v. Hugo*, 619 A.2d 347, 350 (Pa.

Super. Ct. 1993) (quoting *Wolf v. Wolf*, 514 A.2d 901, 906 (Pa. Super. Ct. 1986)). Whether the doctrine of unjust enrichment applies "depends on the unique factual circumstances of each case," and the Court does not focus "on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id.* A plaintiff bringing an unjust enrichment claim "must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'" *Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973)).

The District Court concluded that Plaintiffs failed to satisfy the third element of an unjust enrichment claim "because it is not inequitable for ABIM to keep the benefit since it did not 'force' Plaintiffs to purchase MOC." *Kenney*, 412 F. Supp. 3d at 552. Plaintiffs contend that the District Court erred because they sufficiently alleged that internists are forced to purchase MOC. Appellants' Br. 66. Plaintiffs argue that they are "forced" to purchase MOC from ABIM because of the "economic reality" that if their ABIM certification is revoked, they "are no longer eligible for admitting and other privileges, employment, insurance coverage, and other requirements for the successful practice of medicine." *Id.* Thus, internists are forced to purchase MOC, a product they do not want to buy.

Plaintiffs' actions undermine their allegation that internists are forced to purchase MOC.[7] Dr. Kenney and Dr. Manalo were able to choose not to participate in MOC at certain points in their respective careers. *See* Am. Compl. ¶¶ 79–80 (alleging that Dr. Kenney decided not to participate in MOC); *id.* ¶ 93 ("Dr. Manalo's ABIM certification in internal medicine was terminated in 2007 after he decided not to purchase MOC."). Dr. Manalo was able to secure employment and remain employed for six years despite his refusal to purchase MOC. This suggests that he was able to resist the economic pressures that Plaintiffs allege force internists to purchase MOC. Thus, Plaintiffs' conclusory allegation that ABIM forces internists to purchase MOC, which the Court is not required to accept as true, is directly contradicted by Dr. Kenney's and Dr. Manalo's experiences with MOC.

Ultimately, we conclude that Plaintiffs have not plausibly alleged that it would be inequitable for ABIM to retain the MOC-related fees paid by Drs. Kenney, Joshua, and Murray-Leisure because Plaintiffs have not plausibly alleged that they were forced to purchase MOC. We, therefore, will affirm the District Court's dismissal of the unjust enrichment claim.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's order.

[7] Plaintiffs do not allege that Dr. Manalo purchased MOC. Thus, Dr. Manalo cannot bring an unjust enrichment claim based on MOC-related fees paid to ABIM because Dr. Manalo did not confer such a benefit on ABIM.