**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-3845
_____

MARKDUTCHCO 1 B.V.; MARKMIDCO S.ÀR.L

v.

ZETA INTERACTIVE CORP.,
            Appellant

_____

No. 20-2824
_____

MARKDUTCHCO 1 B.V.

v.

ZETA INTERACTIVE CORP.,
            Appellant

v.

MARKMIDCO S.ÀR.L
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 1:17-cv-01420; 1:17-cv-01641)
District Judge:  Honorable Colm F. Connolly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 22, 2021

Before: CHAGARES, PORTER and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed: August 10, 2021)

_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Defendant-appellant Zeta Interactive Corporation filed these consolidated appeals challenging the District Court's orders in two lawsuits arising from its purchase of eBay's former enterprise customer relationship management business from a consortium of private equity firms that formed plaintiffs-appellees MarkDutchCo 1 B.V. and MarkMidCo S.àr.l (collectively, "MarkDutch"). In the first suit, the District Court confirmed an arbitral award MarkDutch obtained against Zeta, while in the second, the District Court granted summary judgment to MarkDutch against Zeta for breaching the parties' purchase agreement. The District Court dismissed Zeta's counterclaims in both actions.

Because the District Court made no error of fact or law in confirming the arbitral award, and because we hold there was no error in the District Court's dismissals or grant of summary judgment, we will affirm the orders of the District Court.

I.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Because we write only for the parties, we recount only those facts essential to our decision.

## A.

These appeals both arise from an Interest Purchase Agreement (the "IPA") that MarkMidCo and Zeta executed on August 28, 2015. Under the agreement, Zeta purchased MarkMidCo's interest in a consumer relationship management business (the "Business") that consisted of several companies providing marketing services. MarkMidCo would go on to assign some of its own interests under the IPA to MarkDutchCo, its corporate affiliate.

The IPA contained several terms that the parties now dispute. In exchange for MarkDutch's interest in the Business, Zeta would pay $23 million in cash ($19.55 million of which was due at closing) and about 1.7 million shares of Zeta stock, as well as several $4 million "earn-out" payments. The agreement obliged Zeta to make each earn-out payment if the Business met certain performance targets as measured by earnings before interest, taxes, depreciation, and amortization ("EBITDA") within an allotted time frame.[1] The IPA provided that the first earn-out period would end one year after the transaction closed.

To determine whether the Business had met each earn-out target, the IPA required that "[w]ithin thirty[] days following the end of each" earn-out period, Zeta deliver to

---

[1] The IPA also required Zeta to use its "commercially reasonable efforts" to have the Business achieve the earn-out performance targets, 19-3845 Appendix ("App.") 102, and the parties do not dispute that Zeta did so.

MarkDutch a written statement setting out the Business's EBITDA for the prior period and calculating the resulting earn-out payment. Appendix in No. 19-3845 ("19-3845 App.") 212. MarkDutch would then have the right to review all materials Zeta used in preparing the earn-out statement and would have ten business days to deliver a notice objecting to the statement to Zeta. The IPA required the notice, "to the extent possible based on information available to" MarkDutch, to set out any of MarkDutch's alternative calculations and supporting details. 19-3845 App. 212. The parties agreed that if they could not resolve a dispute over the earn-out payment themselves, they would submit to an accounting arbitrator who would "be the sole arbiter of all matters, procedural and/or substantive," as to the disputed earn-out payment. 19-3845 App. 213. The Arbitrator's decision would "be final and binding upon [the parties] absent fraud, bad faith or manifest error." 19-3845 App. 213.

The IPA also included representations and warranties regarding the Business. Among these representations were that certain patents would be sold with the Business, and that to MarkDutch's knowledge, all those patents were "valid and enforceable." 19-3845 App. 227. MarkDutch also made warranties about the organization and existence of certain entities with which Zeta would do business, various labor matters, and tax liabilities Zeta might face.

Finally, the IPA provided that MarkDutch would indemnify Zeta against losses arising from "any breach of any representation or warranty" in the IPA that it had made. 19-3845 App. 235. Under Section 6(a) of the IPA, Zeta could seek indemnification for breaches of MarkDutch's representations and warranties for up to eighteen months after

4

the closing date and could pursue its right to seek indemnification beyond eighteen months so long as it delivered a claim notice to MarkDutch "on or prior to the [eighteen-month] Expiration Date." 19-3845 App. 234. The ability to seek indemnification would otherwise expire after eighteen months post-closing. Section 6(b)(iv)(A) set out the procedure for Zeta to seek indemnification: it provided first, that Zeta would "promptly transmit" a claim notice; second, that the claim notice should include certain facts; and third, that "[f]ailure to provide such Claim Notice promptly shall not affect the right of [Zeta] to indemnification hereunder except to the extent [MarkDutch would be] materially prejudiced by such failure." 19-3845 App. 235-36.

Zeta could further protect itself by, at closing, retaining $3.45 million of the $23 million cash payment for the Business as a "holdback amount." 19-3845 App. 237, 248. Under Section 6(b)(v) of the IPA, after eighteen months and three business days had passed from the closing date, Zeta could continue to retain any part of the holdback amount that had been "finally determined" to cover a loss that MarkDutch had agreed to indemnify. 19-3845 App. 237. At that time, the IPA required Zeta to remit the remainder of the holdback amount to MarkDutch. A final determination of an amount Zeta could withhold under the holdback provision could include "an agreement [between the parties] in writing," "a final and non-appealable order" from a court of competent jurisdiction, or "a final non-appealable determination" from an arbitrator adjudicating the dispute. 19-3845 App. 237.

B.

5

Zeta and MarkDutch closed the transaction on November 2, 2015. A year then passed, and with it, the first earn-out period. In line with the IPA, Zeta submitted its first earn-out statement on December 29, 2016. Zeta claimed that it did not owe MarkDutch the first earn-out payment because the Business missed the first earn-out target. MarkDutch and Zeta then exchanged a series of letters, with MarkDutch purporting to have adequately objected to the earn-out statement by the IPA's deadline for doing so, and Zeta claiming that MarkDutch failed because it had not provided an alternative calculation of the Business's EBITDA. On January 30, 2017, MarkDutch informed Zeta that it would refer their dispute to arbitration. The parties agreed to an arbitrator by March, and arbitration began the following month. MarkDutch and Zeta agreed on the issues the Arbitrator would consider, including "the procedural appropriateness of" Zeta's earn-out statement, MarkDutch's objection notice and supplement, and the accompanying correspondence between the parties. 19-3845 App. 337.

The Arbitrator rendered his decision that August. The Arbitrator ruled on both the substantive and procedural questions the parties raised, and concluded that MarkDutch's notice, supplement, and other correspondence through the end of January 2017 were procedurally appropriate. Turning to the substance of the parties' dispute, the Arbitrator determined that the Business's EBITDA met the first earn-out target, and that Zeta owed MarkDutch the first $4,000,000 earn-out payment as a result.

Zeta disputed the Arbitrator's award and MarkDutch next filed a complaint in the Delaware Court of Chancery seeking to enforce the decision. On October 10, 2017, Zeta answered the complaint with several counterclaims. Zeta asserted that MarkDutch

6

erroneously omitted certain inventors from the patents it sold, which in turn rendered those patents unenforceable. Accordingly, Zeta sought correction of the patents and accompanying damages under 35 U.S.C. §§ 152 and 256, and further asserted claims against MarkDutch for breach of contract and indemnification under the IPA, fraud, declaratory relief, and to vacate the arbitral award, Zeta then removed the case to the District Court, citing, inter alia, the Federal Arbitration Act (the "FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").[2]

MarkDutch moved to confirm the Arbitrator's award. The District Court granted the motion in November 2019, holding that the Arbitrator acted within his agreed-upon powers, and that a "manifest error" standard did not require setting aside the award as Zeta requested. The District Court also granted MarkDutch's concurrent motion to dismiss Zeta's counterclaims, holding that Zeta's counterclaim for correction of invention improperly sought to recover damages, that the contract counterclaims were untimely, and that Zeta had failed to plead its fraud claim with sufficient particularity. Zeta then timely appealed from this decision.

C.

---

[2] The New York Convention governs all commercial arbitration agreements — and the disputes arising from them — except those made only between United States citizens and "otherwise are domestic in nature." Invista S.À.R.L. v. Rhodia, S.A., 625 F.3d 75, 84 (3d Cir. 2010) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009)). While Zeta is an American company, MarkDutchCo and MarkMidCo are respectively Netherlands and Luxembourg corporations, so it is not disputed the New York Convention governs their disagreement.

A separate disagreement between the parties over the holdback provision proceeded on a parallel track while they arbitrated the earn-out dispute. MarkDutch and Zeta closed the transaction on November 2, 2015, so the eighteen-month-and-three-business-day holdback period expired on May 5, 2017. Zeta did not reach an agreement to be indemnified by MarkDutch by that deadline. It also failed to obtain a final, non-appealable judgment for indemnification, and similarly did not secure an arbitral award to the same effect.

That did not deter Zeta from sending MarkDutch a letter styled as a claim notice on May 1, 2017. The letter informed MarkDutch that Zeta intended to retain what it viewed as its losses from the $3.45 million holdback amount. As relevant here, the letter asserted that MarkDutch caused Zeta losses through failing to list in the schedules to the IPA certain employees Zeta would eventually have to pay, because the Business faced a potential property tax liability in Washington and Texas for leases that were not listed in the IPA, and because the Business had unexpectedly paid employees for their accrued but unused vacation time.

MarkDutch filed its second lawsuit against Zeta that November in an attempt to force Zeta to remit the holdback amount. MarkDutch moved for summary judgment in December 2019,[3] and Zeta filed its answer and counterclaims against MarkDutch two days later. Zeta alleged that at the same time it closed the transaction with MarkDutch, it

---

[3] MarkDutch originally framed its motion as one for judgment on the pleadings, but under Federal Rule of Civil Procedure 12(d), the District Court treated the motion as one for summary judgment.

entered into a side agreement to purchase services from MarkDutch's then-subsidiaries that were not sold as part of the Business until Zeta could successfully hire their employees (collectively, the "Supplier Entities"). Zeta further asserted that the Supplier Entities violated Singaporean privacy laws, breached the side agreement by charging Zeta full-time fees for their employees' part time work, and misclassified their employees as independent contractors — in turn incurring tax obligations. Zeta therefore claimed that MarkDutch breached the IPA's warranties regarding the Supplier Entities' organization and good standing, legal compliance, labor classification, and tax compliance. MarkDutch then moved to dismiss Zeta's counterclaims.

The District Court granted both of MarkDutch's motions. It held that the IPA unambiguously required Zeta to receive a final determination in its favor within eighteen months and three business days of closing to retain the holdback amount, even though Zeta could generally preserve indemnification claims with a timely notice. It went on to dismiss Zeta's counterclaims on several grounds: first, that any breaches of the side agreement did not affect MarkDutch as a nonparty; second, that the IPA's "good standing" warranties addressed corporate existence rather than perfect compliance; and third, that Zeta's misclassification claims were time-barred under the IPA.

Zeta also timely appealed from this order. We have in turn consolidated the appeals from both the earn-out and holdback disputes.

II.

The District Court had jurisdiction over MarkDutch's suit to enforce the Arbitrator's award in the earn-out dispute under 9 U.S.C. § 203, which grants federal

9

jurisdiction over confirmation proceedings of awards governed by the New York Convention, as well as under 28 U.S.C. § 1332, which also gave the District Court jurisdiction over MarkDutch's suit over the holdback provision. We have jurisdiction over both appeals under 28 U.S.C. § 1291.[4]

"On appeal from a district court's ruling on a motion to confirm or vacate an arbitral award, we review its legal conclusions de novo and its factual findings for clear error." Opalinski v.Robert Half Int'l Inc., 761 F.3d 326, 330 (3d Cir. 2014) (quoting Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012)). The District Court's interpretation of the New York Convention is a legal question over which we exercise plenary review. Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 307 (3d Cir. 2006).

We also exercise plenary review over the District Court's grant of summary judgment. Cranbury Brick Yard, LLC v. United States, 943 F.3d 701, 708 (3d Cir. 2019). We will affirm a grant of summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view the facts in the light most favorable to the party who opposes the motion for summary judgement and then decide if those

---

[4] Although Zeta asserted a counterclaim against MarkDutch under the Patent Act, the Federal Circuit only exercises jurisdiction over compulsory patent counterclaims. 28 U.S.C. § 1295(a)(1). Because "there is no meaningful overlap between the facts and law underlying" MarkDutch's claim for confirmation of an arbitral award and Zeta's counterclaim for correction of patents not even at issue in the arbitration, M.R. v. Ridley Sch. Dist., 744 F.3d 112, 121 (3d Cir. 2014), Zeta's patent counterclaims are not compulsory.

facts would be enough, if eventually proved at trial, to allow a reasonable finder of fact to resolve the case in favor of the opposing party. See Tolan v. Cotton, 572 U.S. 650, 656-57 (2014) (per curiam); Stratechuk v. Bd. of Educ., 587 F.3d 597, 603 (3d Cir. 2009). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Our plenary review extends to the District Court's dismissal of Zeta's counterclaims. Watters v. Bd. of Sch. Dirs., 975 F.3d 406, 412 (3d Cir. 2020). We accept as true all factual matters alleged in Zeta's counterclaims, but the counterclaims cannot survive unless the facts they recite are enough to state plausible grounds for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A counterclaim that relies just on "conclusory statements," or on "threadbare recitals of the elements of a cause of action" without supporting factual allegations, does not establish plausible grounds for relief. Fischbein v. Olson Rsch. Grp., Inc., 959 F.3d 559, 561 (3d Cir. 2020) (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018)). And where, as here, a plaintiff pleads fraud, Federal Rule of Civil Procedure 9(b) requires that it do so "with particularity." As such, a plaintiff must allege "the who, what, when, where, and how of the events at issue," but need not include "the date, time, place, or content of every single allegedly false [] claim." United States ex rel. Bookwalter v. Univ. of Pitt. Med. Ctr., 946 F.3d 162, 176 (3d Cir. 2019) (quoting United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016)).

11

III.

A.

We will affirm the District Court's confirmation of MarkDutch's arbitral award. A court may only set aside an award under the New York Convention in narrow circumstances: either on a specific ground specified in the Convention itself, or — if a tribunal renders the award in the United States — a ground for vacatur set out in the FAA. See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 291-92 (3d Cir. 2010); see also 9 U.S.C. § 207. Under either framework, a court may set aside an award if an arbitrator's award exceeds the scope of his or her authority under an arbitration agreement. See 9 U.S.C. § 10(a)(4) (providing that FAA permits award to be set aside "where the arbitrators exceeded their powers"); New York Convention art. V(1)(c), Dec. 29, 1970, 21 U.S.T. 2517 (awards may be set aside that "deal[] with a difference…not falling within the terms of the submission"). Zeta contends that such an abuse of authority took place here when the Arbitrator interpreted the IPA as permitting MarkDutch's initial and supplemental notices objecting to Zeta's earn-out statement.

We agree with the District Court that Zeta did not meet the "heavy burden" the FAA and New York Convention place on a party that seeks to overturn an arbitral award as ultra vires. Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013). The parties bargained for an IPA that committed "all matters, procedural and/or substantive" to arbitration in resolving the earn-out dispute. 19-3845 App. 102 (emphasis added). They reaffirmed that commitment when they engaged the Arbitrator, agreeing that among the

12

matters before him would be "the procedural appropriateness" of MarkDutch's objections. 19-3845 App. 337. The Arbitrator in turn examined the IPA's text to determine whether MarkDutch's initial and supplemental objections were indeed procedurally appropriate. Because the Arbitrator's decision "dr[ew] its essence from the contract," we are unpersuaded that he "act[ed] outside the scope of his contractually delegated authority." Oxford Health, 569 U.S. at 569 (quoting E. Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000)).

Nor will we disturb the District Court's confirmation on the ground that the District Court should have invalidated any agreement to arbitrate when it rejected Zeta's argument for a "manifest error" standard. Although Zeta now contends that the standard was "integral to the arbitration as a check on erroneous mathematics, deviation from the definitions and process set forth in the IPA, and invalid accounting techniques," 19-3845 Zeta Br. 13, it previously cast the standard as "equivalent to the judicially recognized doctrine of 'manifest disregard of the law.'" 19-3845 App. 16. If Zeta maintains that these two definitions of the standard are the same, it cannot now dispute the District Court's conclusion that it failed to allege that the Arbitrator's "fail[ure] to consider the timeliness of Markmidco's claims[,] . . . erroneous determination on [the parties' disputed issues]," or "fail[ure] to consider any ancillary claims" were in fact made in manifest disregard of the law. 19-3845 App. 16. On the other hand, if Zeta now intends the "manifest error" standard to mean something else, it did not present that meaning to the District Court. As a result, it is either the case that any error the District Court may have made in setting aside the "manifest error" standard is harmless and Zeta has forfeited any

13

argument to the contrary, or that Zeta is now attempting to present a new definition of "manifest error" that it forfeited the opportunity to offer to the District Court. See Simko v. U.S. Steel Corp., 992 F.3d 198, 205 (3d Cir. 2021) ("It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review."); Barna v. Bd. of Sch. Dirs., 877 F.3d 136, 145 (3d Cir. 2017) (requiring "appellant's opening brief [to] set forth and address each argument the appellant wishes to pursue in an appeal"). Either way, we see no exceptional circumstances to warrant excusing the forfeiture here, so will affirm the District Court's confirmation of the Arbitrator's award.[5]

B.

We will also affirm the District Court's dismissal of Zeta's counterclaims in the earn-out dispute. We agree that, as the District Court held and Zeta concedes, Zeta's claim for patent correction is improperly pleaded because Zeta seeks monetary relief

---

[5] MarkDutch requests in its briefing that we require Zeta to "reimburse Appellees' full costs of this appeal." 19-3845 MarkDutch Br. 40. Although we have reviewed district courts' orders granting and denying fees under the "reasonable chance to prevail" principle MarkDutch cites, see, e.g., Chauffeurs Local Union No. 765 v. Stroehmann Bros. Co., 625 F.2d 1092, 1094 (3d Cir. 1980), we assess fee requests for appeals from arbitral confirmation proceedings in the first instance under Federal Rule of Appellate Procedure 38. See Becton Dickinson & Co. v. Dist. 65, United Auto. Workers of Am., 799 F.2d 57, 62 n.1 (3d Cir. 1986). Rule 38 requires a "separately filed motion or notice from the court" before a party can obtain sanctions because, as explained in the 1994 Advisory Committee Note to the Rule, "[a] statement inserted in a party's brief that the party moves for sanctions is not sufficient notice." Because MarkDutch did not file such a motion, it did not provide sufficient notice to request sanctions from Zeta under Rule 38. And because we conclude that at minimum, Zeta's attempt to obtain review of the dismissal of its counterclaims was not frivolous, we will not issue a Rule 38 notice on our own behalf.

14

rather than a court order correcting its patents. Zeta's argument that it used its briefing and prayer for relief to clarify that it sought correction does not salvage the claim as Zeta pleaded it: a 12(b)(6) motion tests the sufficiency of the allegations underlying a claim in the complaint, see Iqbal, 556 U.S. at 678-79, not a party's subsequent briefing or the legally distinct prayer for relief, see Lima v. Newark Police Dep't, 658 F.3d 324, 327, 332 (3d Cir. 2011) (concluding that separately captioned prayer for relief "was not part of a particular claim or count in the complaint"); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 (3d ed. 2021) ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief[] and the [Rule 8(a)(3)] demand for judgment is not considered part of the claim for that purpose . . . ."). Had Zeta wished to amend its counterclaim, it could have moved for leave from the District Court to do so. But because it did not make such a motion with an accompanying amended complaint, the District Court properly dismissed Zeta's counterclaim for patent correction. See In re Allergan ERISA Litig., 975 F.3d 348, 358 (3d Cir. 2020).

The District Court also properly dismissed Zeta's contract-based counterclaims as time-barred. Zeta does not attempt to defend the counterclaims as timely, but instead argues that its untimely counterclaims can proceed in the face of either an inadequate or absent claim notice so long as MarkDutch did not suffer material prejudice. Zeta never raised this argument before the District Court despite MarkDutch's argument that Zeta's claims were untimely, so we need not consider it here. See Barna, 877 F.3d at 145.

Finally, the District Court correctly held that Zeta failed to properly plead its remaining counterclaims. Zeta's counterclaim for fraud does not allege that MarkDutch

knew any of its representations about the patents it sold to Zeta were incorrect. See

Hauspie v. Stonington Partners, Inc., 945 A.2d 584, 586 (Del. 2008) (claim for fraud

requires "the defendant's knowledge or belief that the representation was false, or was

made with reckless indifference to the truth"). And insofar as Zeta challenges the District

Court's dismissal of its claims to vacate the Arbitrator's award or for declaratory relief,

they fall with the merits of Zeta's other arguments.

C.

We will affirm the District Court's grant of summary judgment to MarkDutch in

the holdback dispute. The parties agree that Zeta never obtained a "final judgment"

allowing it to retain the holdback amount within the meaning of Section 6(b)(v) of the

IPA. Instead, Zeta argues that a material dispute of fact exists as to the IPA's

interpretation, and a reasonable person may have understood the IPA to only require that

it preserve a claim for indemnification within the eighteen-month-and-three-business-day

holdback period.

This interpretation is untenable. Delaware law gives contracts' "words their plain

meaning," United States v. Sanofi-Aventis U.S. LLC, 226 A.3d 1117, 1129 (Del. 2020)

(quoting Norton v. K-Sea Transp. Partners L.P., 67 A.3d 354, 360 (Del. 2013)), and will

not infer ambiguity simply from "[t]he parties' steadfast disagreement," Fletcher v.

Feutz, 246 A.3d 540, 555 (Del. 2021) (quoting Rhone-Poulenc Basic Chems. Co. v. Am.

Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992)).[6] The IPA's text provides that Zeta

---

[6] The parties agree that Delaware law applies to this case, as do we.

16

may "withhold and retain . . . from and offset against the Holdback Amount an amount equal to any Losses of Buyer Indemnitees that are finally determined," and that after eighteen months and three business days from closing, Zeta must remit "an amount equal to the Holdback Amount, less the Retained Holdback Amounts." 19-3845 App. 237. This language is unambiguous, and the clause rendering Section 6(b)(v) "[s]ubject to the provisions of this Section 6" does not change that fact. Section 6(a)'s general language establishes the existence and survival of indemnification claims, while Section 6(b)(v) establishes Zeta's rights if it succeeds on such a claim within eighteen months and three business days. See Sunline Com. Carriers, Inc. v. CITGO Petrol. Corp., 206 A.3d 836, 846 (Del. 2019).

Nor are we persuaded by Zeta's attempts to introduce extratextual ambiguities into the IPA. Despite Zeta's assertion that Section 6(b)(v) is "superfluous" because Zeta could find other ways to collect an indemnity, 20-2824 Zeta Br. 16-17, Zeta's own briefing describes the holdback amount as "insurance" against any MarkDutch breach of warranty, id. at 5, and the holdback provision allowed Zeta, rather than MarkDutch, to benefit from the time-value of any non-indemnified funds it would ultimately remit. Similarly, MarkDutch and the District Court's interpretation of the IPA is neither "absurd" nor "nonsensical." Id. at 16-17. Even if, as Zeta claims, it is "impossible to get a non-appealable judgment within 18 months," id. at 17, Zeta overlooks the holdback provision's terms allowing "an agreement in writing" or an "arbitration or like panel['s]" decision to satisfy Section 6(b)(v)'s "finally determined" requirement, 19-3845 App. 237. The parties' arbitration in the earn-out dispute lasted about only about eight months, and

17

any negotiated agreement could take even less time still. Nothing about the remedies available under the holdback provision renders it absurd so as to set aside the parties' bargained-for terms. The IPA is unambiguous: Zeta could only have retained the holdback amount if it had received a final determination it did not obtain.

D.

Lastly, we will affirm the District Court's dismissal of Zeta's counterclaims in the holdback dispute. Zeta failed to submit a timely claim notice to preserve any of the claims it now pursues on appeal.[7] Zeta's May 2017 claim notice alerted MarkDutch that Zeta paid employee salaries that were unlisted in the IPA's schedules, that a Business entity Zeta purchased faced unanticipated potential tax liabilities to two states, and that Zeta unnecessarily and unexpectedly had to pay for that same entity's employees' unused paid time off. These claims have nothing to do with, as alleged in Zeta's counterclaims, whether Zeta was overcharged for the Supplier Entities' employee time under the side agreement, the Supplier Entities' employee classifications and the tax liabilities stemming therefrom, or whether the Supplier Entities had complied with Singaporean law. Although Zeta contends it needed only to notice its claims in "reasonable detail," 20-2824 Zeta Br. 13, the trouble for Zeta is not that its claim notice lacked detail —

---

[7] To the extent Zeta disagrees with the District Court's dismissal of its holdback counterclaims on any other ground, see 20-2824 App. 13-19, it has not preserved that disagreement before this Court.

rather, it is that the claim notice described in considerable detail claims that are different from the ones it now seeks to assert.

Zeta cannot escape this conclusion by arguing that MarkDutch was not materially prejudiced by its failure to preserve its claims. Delaware contracts are "construe[d] as a whole and [to] give effect to every provision," Sanofi-Aventis, 226 A.3d at 1129 (quoting Norton, 67 A.3d at 360). Zeta's argument would have us ignore Section 6(a) of the IPA's exacting provisions governing claim survival and expiration in favor of a nonspecific "material prejudice" test from Section 6(b)(iv)(A). Doing so would not give effect to every portion of the IPA. Because Section 6(b)(iv)'s material prejudice provision only excuses harmless procedural deficiencies in a claim notice and does not govern the survival of underlying claims themselves, Zeta's unnoticed claims cannot persist past the eighteen-month post-closing deadline based on a lack of prejudice.

## IV.

For the foregoing reasons, we will affirm the District Court's orders: (1) confirming MarkDutch's arbitral award and dismissing Zeta's counterclaims in 19-3845; and (2) granting summary judgment to MarkDutch and dismissing Zeta's counterclaims in 20-2824.